(No. 65987.—

LEWIS E. ADKINS, M.D., Appellant, v. SARAH BUSH
LINCOLN HEALTH CENTER, Appellee.

*Opinion filed September 20, 1989.*

CALVO, J., took no part.

Kent Masterson Brown, of Lexington, Kentucky, and Richard H. Parsons, of Peoria, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Frederick P. Velde and Daniel R. Simmons, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

Dr. Lewis E. Adkins, a physician, brought this suit in the circuit court of Coles County against the Sarah Bush Lincoln Health Center (the Center), a small private hospital located in Charleston, Illinois, and several physicians serving on the Center's peer review committees. The suit challenged the Center's decision to deny his annual reapplication for staff privileges and to impose a summary suspension of surgical and obstetrical privileges. These disciplinary actions were taken because of Adkins' claimed failure to conform to the Center's standard of competence and care and because of his failure to correct previously found professional deficiencies. Count I of the complaint alleges that the Center failed to follow its bylaws in imposing the summary suspension and in denying surgical and obstetrical privileges on his annual reapplication for staff privileges.

The trial court dismissed counts II and III of the complaint against both the Center and the individual doctors for failure to state a claim. Count II sought money damages and a declaration that the defendants' conduct was not immunized, but was willful and wanton. Treble damages were also claimed in count III for an alleged conspiracy against the plaintiff in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3). The trial court dismissed each of the physician-defendants on count I, holding that the declaratory and

injunctive relief requested could be granted, if at all, only against the Center. The trial court then granted summary judgment under count I in favor of the Center with regard to the Center's imposition of the summary suspension and in favor of Adkins with regard to the Center's denial upon reapplication of staff privileges. The plaintiff appealed the trial court's ruling with regard to the summary suspension, the Center cross-appealed with regard to the reapplication and the appellate court affirmed on each appeal. (158 Ill. App. 3d 982.) We granted the plaintiff's petition for leave to appeal (107 Ill. 2d R. 315).

Under the Center's bylaws a staff physician is required to reapply annually for medical staff privileges. In a letter dated November 1, 1983, Adkins, a member of the Center's medical staff since 1977, reapplied for staff membership and renewal of surgical and obstetrical privileges, which were to expire on December 31, 1983. At the time of his reapplication Adkins was on the Center's medical staff subject to a partial summary suspension. Under the terms of the suspension Adkins could exercise clinical privileges, including surgical and obstetrical privileges, at the Center only under the supervision of a consulting physician. The Committee of Three, a peer review body provided for under the Center's bylaws and composed of the president of the medical staff, the chief of family practice and the hospital administrator, had authority to impose summary suspensions of staff members as immediate corrective action when the best interests of the Center required such action. Because of alleged serious professional faults in treating various patients and because of a failure to correct those deficiencies, the partial suspension of Adkins was imposed by the Committee of Three in May of 1983.

It was the responsibility of the Center's Executive Committee, another peer review committee composed of

11 physicians practicing at the Center, to make recommendations to the Center's Governing Body (the board of directors of the Center, the members of which were nonphysicians) as to whether a staff physician's annual reapplication for the renewal of staff privileges should be granted. The Executive Committee, on December 15, 1983, recommended to the Governing Body that Adkins' general staff privileges be renewed, but that his staff privileges in surgery and obstetrics be denied. The Governing Body approved the Executive Committee's recommendation on the same date and on December 16, 1983, notified Adkins that his reapplication for general staff privileges was granted, but that surgical and obstetrical privileges had been denied.

Also on December 15, 1983, in a separate proceeding, the Committee of Three imposed a second summary suspension on Adkins' privileges. This summary suspension suspended his surgical and obstetrical privileges and allowed general clinical privileges only if he obtained and worked with properly credentialed consultants for each patient he admitted to the Center. Adkins was notified on December 16, 1983, of the second summary suspension and of his right to request a hearing before the Executive Committee.

Adkins filed a notice with the Center's administrator on December 28, 1983, requesting a hearing on his "suspension from the medical staff." Adkins was notified by certified mail that a hearing before the Executive Committee had been scheduled for January 17, 1984. The notice stated that both the second summary suspension and the denial of the annual reapplication would be considered. The notification listed 13 areas of professionally deficient performance by Adkins and was accompanied by 30 supporting patient charts. On February 17, 1984, following a continuance to that date at Adkins' request, he appeared before the Executive Committee. Adkins

made no objection to the Executive Committee's conducting the hearing until he appeared before it on February 17. At that time he contended that the hearing should not be held before the Executive Committee for two reasons. First, he argued that he was entitled, under the bylaws, to a review before an *ad hoc* committee immediately following the recommendation that reapplication for staff privileges be denied. Second, he argued that the Executive Committee could not conduct an impartial review of his suspension by the Committee of Three because it had already, in the reapplication proceeding, considered and made a determination on the issues now before it for a hearing, *viz.*, Adkins' competence in surgery and obstetrics.

On March 16, 1984, following the February hearing, the Executive Committee recommended continuance of the terms of the second summary suspension imposed by the Committee of Three and confirmed its own recommendation that Adkins' application for reappointment to the medical staff be denied. Adkins, pursuant to the Center's bylaws, then filed a notice of appeal to the Governing Body, which after consideration of the record, adopted the recommendations of the Executive Committee on May 24, 1984.

Having exhausted the remedies available under the Center's bylaws, Adkins filed this action contending that (1) the actions of the Center were invalid because they violated procedures established in its bylaws; (2) the actions of the defendants were willful and wanton and, therefore, the defendants were not immune from liability under section 2b of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4406), which provides immunity from civil liability to persons serving on hospital peer review committees except in cases of willful and wanton misconduct; and (3) the defendants had conspired against him in denying his privileges and unreasonably re-

strained trade in violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—1 *et seq.*), entitling him to treble damages against each of the defendants.

We first observe that counsel for the parties agreed at the time of oral argument before us that the summary judgment entered in favor of Adkins by the trial court is not contested on this appeal by the Center. It is clear that Adkins was not provided, as required by the bylaws, with an *ad hoc* hearing after the Executive Committee had recommended denial upon his reapplication of staff privileges in surgery and obstetrics. Because of this error in the reapplication process, the appellate court properly reinstated Adkins' staff privileges, subject to the restricting conditions of the second summary suspension ordered by the Committee of Three. Therefore, we consider here only the propriety of the circuit court's entry of summary judgment in regard to the summary suspension and its affirmance by the appellate court.

An order granting summary judgment will be reversed only if the pleadings, depositions and admissions show that a genuine issue as to a material fact existed. (*Department of Revenue v. Heartland Investments, Inc.* (1985), 106 Ill. 2d 19, 31; *Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 147.) We hold that no material question of fact existed and that the summary judgment was properly granted.

In the majority of jurisdictions, including ours, there is, in cases involving private hospital staff privileges, a "rule of non-review" under which, as a matter of public policy, internal staffing decisions of private hospitals are not subject, except as hereinafter stated, to judicial review. (*Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49, 52; *Lapidot v. Memorial Medical Center*, 144 Ill. App. 3d at 146.) An exception exists when the decision involves a revocation, suspension or reduction of existing staff privileges. In such cases, the

hospital's action is subject to a limited judicial review to determine whether the decision made was in compliance with the hospital's bylaws. (*Knapp v. Palos Community Hospital* (1988), 176 Ill. App. 3d 1012, 1018; *Lapidot v. Memorial Medical Center*, 144 Ill. App. 3d at 146; *Jain v. Northwestern Community Hospital* (1978), 67 Ill. App. 3d 420, 425.) The judicial reluctance to review these internal staff decisions reflects the unwillingness of courts to substitute their judgment for the professional judgment of hospital officials with superior qualifications to consider and decide such issues. (*Claydon v. Sisters of the Third Order of St. Francis* (1989), 180 Ill. App. 3d 641, 644; *Gates v. Holy Cross Hospital* (1988), 175 Ill. App. 3d 439, 444; *Rao v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1986), 140 Ill. App. 3d 442, 456.) Because Adkins' case involves a suspension of existing privileges, we first look to whether the Center's proceedings and its decision to summarily suspend Adkins were made in compliance with its bylaws.

Adkins' privileges were summarily suspended by the Committee of Three pursuant to the procedure provided in the Center's bylaws. The bylaws provide that the Committee of Three may take immediate action to suspend all or any portion of the clinical privileges of a staff physician whenever such action is required in the best interest of the Center's patients. After notification to the physician that a suspension has been imposed, the bylaws provide that the physician can request a hearing before the Executive Committee. If, after such hearing, the Executive Committee does not recommend immediate termination of the summary suspension, the affected physician can request an appellate review by the Governing Body. This procedure was made fully available to and followed by Adkins. The evidence shows that Adkins' surgical and obstetrical privileges were summarily sus-

pended by the Committee of Three on December 15, 1983, upon evidence that he repeatedly failed to meet professional standards of care, which resulted in ineffective and dangerous treatment, including treatment, which on at least two occasions, may have caused or contributed to the death of a patient. As stated above, at Adkins' request and in accordance with the bylaws, the Committee of Three's decision was reviewed by the Executive Committee, which after consideration of each of the charts cited as providing evidence of deficient treatment, recommended affirmance of the Committee of Three's decision. Finally, Adkins was provided with an appellate review before the Governing Body.

Adkins does not claim that he was denied the opportunity to appear before the Executive Committee or to appeal to the Governing Body. He does argue that the Executive Committee made a prior determination on his competence in surgery and obstetrics when it recommended denial of his reapplication on December 15, 1983, and could not, therefore, have given him a fair and impartial hearing on his appeal of the summary suspension, which was based on the same claimed incompetence. Adkins makes no claim of actual bias or prejudice on the part of the individual members of the Executive Committee; instead he objects that the Executive Committee was unable to fairly judge because of its prior involvement in his case.

Because he feared that the committee had prejudged the issue, Adkins, when he appeared before the Executive Committee on February 17, asked that an *ad hoc* committee be appointed to hear his appeal. Although, as we pointed out above, there are provisions under defined circumstances for convening an *ad hoc* committee in other sections of the bylaws, there is no provision, as Adkins acknowledges, for the convening of an *ad hoc* committee in summary suspension proceedings. Adkins

says that such an omission is contrary to basic notions of fairness and here led to unfair suspension of his surgical and obstetrical privileges at the Center.

The appellate court concluded that because the Center's bylaws had been followed, there should be no judicial interference with the Center's decision. Adkins argues that such review is too narrow and that the inquiry should also include whether the Center's rules and procedure were fundamentally fair.

We first note that a private hospital's actions do not constitute State action and therefore are not subject to scrutiny for compliance with due process protections. (*Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449; *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520; *Settler v. Hopedale Medical Foundation* (1980), 80 Ill. App. 3d 1074; *Tunca v. Lutheran General Hospital* (7th Cir. 1988), 844 F.2d 411; *Modabar v. Culpeper Memorial Hospital, Inc.* (4th Cir. 1982), 674 F.2d 1023; *Hodge v. Paoli Memorial Hospital* (3d Cir. 1978), 576 F.2d 563.) There is, in addition, the described reluctance, as a matter of public policy, of courts, with inferior qualifications to judge such issues, to become involved in internal decisions of private hospitals. *Barrows v. Northwestern Memorial Hospital* (1988), 123 Ill. 2d 49; see also *Claydon v. Sisters of the Third Order of St. Francis* (1989), 180 Ill. App. 3d 641 (the decision of a private hospital not to reinstate privileges though the grounds for an earlier revocation of privileges no longer exist is not subject to judicial review).

Though a physician practicing in a private hospital may not have a right to the procedural protections assured by the due process clause, there are certain basic protections which must be accorded a doctor subject to a disciplinary action which could seriously affect his or her ability or right to practice medicine. (*Van Daele v. Vinci*

(1972), 51 Ill. 2d 389; *Head v. Lutheran General Hospital* (1987), 163 Ill. App. 3d 682; *Siqueira v. Northwestern Memorial Hospital* (1985), 132 Ill. App. 3d 293.) Such basic protections include notice and a fair hearing. See *Ladenheim v. Union County Hospital District* (1979), 76 Ill. App. 3d 90, 96.

We have already observed that the Center's bylaws were followed and that the bylaws provide any physician against whom disciplinary action is instituted the basic protections of notice, the right to a hearing, the right to present witnesses and to cross-examine, and the right to an appeal. Adkins was given full opportunity to defend himself and his professional conduct against the summary suspension before the Executive Committee.

The plaintiff urges us to look to *Van Daele v. Vinci* (1972), 51 Ill. 2d 389, where this court judged that although a private association (not a hospital) had followed its bylaws in expelling the plaintiffs, the expulsion could not stand. The court in *Van Daele* was willing to look beyond the issue of compliance with the bylaws because we observed evidence of actual bias on the part of the members of the review committee. Adkins also cites *Pariser v. Christian Health Care Systems, Inc.* (8th Cir. 1987), 816 F.2d 1248, 1250, where the court, looking to what it considered Illinois law, held that the plaintiff-physician was denied a fair and impartial hearing when the very physician who had filed the charges against him sat on the committee that reviewed the charges. Adkins argues that the Executive Committee's earlier consideration of his qualifications demonstrates similar evidence of bias and has denied him the basic protection of a fair and impartial hearing.

Here, we cannot say that the fact that the Executive Committee made a recommendation on Adkins' qualifications in the reapplication proceeding was sufficient, in and of itself, to disqualify the Executive Committee from

acting, as the bylaws provided it should, as the hearing panel with regard to a separate proceeding, the summary suspension. This situation is distinguishable from that in *Van Daele*, where this court found disqualifying bias reflected in the record. In that case, the chairman and several of the members of the review board had been named as defendants in a pending lawsuit filed by the very members of the association whose conduct was under consideration by the committee. In *Van Daele*, we held that there were "too many factors indicating that the proceedings were not good faith disciplinary hearings, but [were instead an] attempt to silence and censure dissident members of the association." *Van Daele*, 51 Ill. 2d at 393.

Here, considering the character and the sequence of events, the evidence and the seriousness of the charges against Adkins, there is nothing to suggest on review that the decision to discipline Adkins was anything other than a professional judgment that such action was required in the best interest of the Center, and the patients it served. We judge that under the circumstances, members of a board of review who knew the subject of the proceeding, which would be almost inevitable in this small, rural community hospital, and in a prior proceeding had considered the professional qualifications of the subject did not, in the absence of contrary evidence, render the Committee incapable of conducting a separate review fairly and impartially. It is assumed that administrative decisionmakers will serve with fairness and integrity while performing their function. See *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 370; *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 55.

In another factual setting, a committee which conducted a prior hearing well might be disqualified from considering the same matter for a second time. Here the

Executive Committee was not reviewing its own decision concerning the imposition of the summary suspension. The act of the Executive Committee to recommend against approving Adkins' reapplication for staff privileges, upon which the plaintiff's assertions of prejudgment and bias were based, was made in the course of its responsibility under the bylaws to recommend approval or denial of privileges regarding the annual reapplication and not as a decision regarding the immediate necessity of suspending Adkins' privileges. That the Executive Committee considered Adkins' performance and competence in recommending denial of surgical and obstetrical privileges on reapplication did not, in the absence of contradicting evidence, prohibit the Executive Committee from conducting a fair, impartial and full hearing on the question of whether the summary suspension was properly imposed by the Committee of Three. (See, *e.g.*, *Wilson v. Lincoln Redevelopment Corp.* (8th Cir. 1973), 488 F.2d 339, 342 (where the court stated that simply because management had been previously apprised of some of the facts concerning the plaintiff's eviction and had made initial decisions without a full hearing cannot by itself justify a charge of prejudice and inability of management to fairly review the facts more adequately developed in a subsequent hearing).) Adkins does not contend that there was actual prejudice on the part of members of the Executive Committee or that the decision of the members was based on anything but an informed review of the facts. The bylaws provide for both annual reapplications and for summary suspensions. Clearly there would be situations in which both would be under consideration at the same time.

In reviewing the peer review decision of a public hospital, the court in *Ladenheim v. Union County Hospital* (1979), 76 Ill. App. 3d 90, 95, held that the participation of one of three members of a hearing board in prelimi-

nary procedures required to bring a case to hearing did not constitute disqualifying bias in the absence of actual personal prejudice or bias demonstrated in the record. In *Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 805, the court held that the burden of establishing actual prejudice of the trier of fact rests on the complaining party and that the entry of an adverse judgment standing alone is not evidence of prejudice. There have been numerous other decisions holding that the fact that a board or committee or its members have earlier considered a physician's qualifications does not of itself make a fair hearing impossible and preclude such a body from weighing an appeal absent evidence of actual bias. See *Duffield v. Charleston Area Medical Center, Inc.* (4th Cir. 1974), 503 F.2d 512, 518-19; *Woodbury v. McKinnon* (5th Cir. 1971), 447 F.2d 839, 845; *Richards v. Emanuel County Hospital Authority* (S.D. Ga. 1984), 603 F. Supp. 81, 84 (consideration on previous occasion of plaintiff's qualifications would not demonstrate such bias as to constitute a denial of due process at a public hospital where plaintiff-physician failed to demonstrate any actual prejudice on the part of the medical staff or the Hospital Authority); *Robbins v. Ong* (S.D. Ga. 1978), 452 F. Supp. 110, 116; *Kiracofe v. Reid Memorial Hospital* (Ind. App. 1984), 461 N.E.2d 1134, 1141; *Yarnell v. Sisters of St. Francis Health Services, Inc.* (Ind. App. 1983), 446 N.E.2d 359, 363; *Eidelson v. Archer* (Alaska 1982), 645 P.2d 171.

There have been like holdings regarding administrative agencies, which operate similarly to hospital review boards and are subject to due process scrutiny. Courts generally have rejected the contention that having investigative and adjudicative functions in the same agency creates an indefensible combination. (See, *e.g.*, *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 55; 3 K. Davis, Administrative Law Trea-

tise §19:4 (2d ed. 1980).) It has also been observed that simply because a tribunal "has had contact with a particular factual context in a prior hearing," or has taken a public position on the facts, is not enough to disqualify the tribunal from passing upon the facts in a subsequent hearing. See, *e.g.*, *Pangburn v. Civil Aeronautics Board* (1962), 311 F.2d 349 (the plaintiff unsuccessfully argued that the C.A.B.'s investigation and issuance of an accident investigation report fixing pilot error as the cause of a plane crash precluded him from obtaining an impartial hearing by that same board on his appeal from a suspension order of the Administrator on the basis of the crash). See also Koch, *Prejudgment: An Unavailable Challenge to Official Administrative Action*, 33 Fed. B.J. 218 (1974); 3 K. Davis, Administrative Law Treatise §19:4 (2d ed. 1980).

Where disciplinary proceedings have been in accordance with the hospital's bylaws, a court will not review disciplinary action taken by a private hospital against a physician affecting the physician's staff privileges. A court, however, will be justified in reviewing a private hospital's actions even where the bylaws are followed if actual unfairness on the part of the hospital, its committees or individual members of the committees is demonstrated in the record. Preknowledge of the facts associated with the proceeding before a committee, however, will not be enough to suggest actual unfairness sufficient to disqualify a committee or individual members of a committee. In order for preknowledge to be sufficient to require disqualification of the committee or any of its members, there must be some additional factor or factors indicating that the subject cannot obtain a fair hearing by the same board or panel. We do not find such additional factors to exist here.

Adkins next argues that the Center violated its bylaws because it did not provide him with adequate notice

of the charges against him, because it denied him the opportunity to cross-examine witnesses at the February 17 hearing and because it denied him the right to address, at the hearing before the Governing Body, the matters cited by the Executive Committee as justification for its determination.

A section of the Center's bylaws provides that "notice of hearing shall state in concise language the acts and omissions with which the practitioner is charged, a list of specific or representative charts being questioned, and/or the other reasons or subject matter that was considered in making the adverse recommendation or decision." Adkins acknowledges that he received from the Center in December of 1983 a statement of charges, together with 30 patient charts. He was accused of two general areas of deficiency in treatment: first, that he violated the standard of care for the treatment of patients at the Center, and secondly, that he violated restrictions imposed on his clinical privileges and/or failed to rectify deficiencies previously addressed in the peer review process. There is no doubt that Adkins had adequate notice of the questions and charts the Executive Committee would be considering during the hearing. Adkins even requested a one-month extension of time, which was granted and which gave him greater opportunity to study the charts and prepare his response. We also take note that Adkins testified before the Executive Committee for over 13 hours on issues raised in the charts. This indicates that Adkins knew what the charges were and that he was prepared to discuss the issues which might be raised.

Even if the issues discussed at the hearing could have been more precisely stated in the notice, the fact that the relevant charts were included was sufficient under the language of the bylaws and under basic notions of fairness to constitute adequate notice. See *Knapp v. Pa-*

*los Community Hospital* (1984), 125 Ill. App. 3d 244, 258 (where the court found no violation of the notice provisions of the bylaws where the plaintiff-doctor received a letter outlining six general charges, supported by 38 patient charts).

Furthermore, the fact that one patient chart was admitted in the proceeding, though it was not included in the packet of patient charts with which the plaintiff was served prior to the hearing, was not sufficient to cause the notice given the plaintiff to be held inadequate. Adkins was furnished with the other charts which the Executive Committee found sufficient to support the suspension. A hospital's public responsibility warrants restrictions on a physician for even a single professional deficiency. See, *e.g.*, *Storrs v. Lutheran Hospital & Homes Society of America* (Alaska 1983), 661 P.2d 632.

As to the issue of cross-examination, Adkins notes that the bylaws provide that the physician has the "right to cross-examine any witnesses, on any matter relevant to the issue of the hearing." From this he argues that the bylaws were violated because no witnesses were presented at the hearing to testify against him. But, as was held in *Rao v. St. Elizabeth's Hospital of the Hospital Sisters of the Third Order of St. Francis* (1986), 140 Ill. App. 3d 442, 459, such a subsection provides the right to cross-examine *any* witnesses, but it does not require that testimony be offered at the hearing. Other courts considering this issue of the right to cross-examination have concluded that there need not be witnesses to be cross-examined in every hearing of this character. Considering the nature of the charges, *i.e.*, professional competence, and the nature of the hearing, which often involves simply an examination of medical records, there may be no need for testimony. (See, *e.g.*, *Woodbury v. McKinnon*, 447 F.2d at 844.) Often the hearing body can reasonably rely on medical reports and charts in making a determi-

nation as to the professional competence of a physician or as to the propriety of his use of given medical treatments or techniques.

The Center's bylaws also provide that hearings "need not be conducted strictly according to the rules of law relating to the examination of witnesses or presentation of evidence," further indicating that testimony need not be given at every hearing.

Adkins complains too that the Governing Body erred in not accepting a written statement he tendered. The Governing Body had already accepted written and, of course, oral statements from the plaintiff. It did not abuse its discretion in not accepting an additional statement. The plaintiff cannot show any prejudice from the refusal.

We consider next the second and third counts of the complaint, which seek money damages for willful and wanton misconduct and treble damages for violation of the State antitrust laws. Section 2b of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4406) provides immunity from civil liability for the acts and decisions of persons serving on hospital peer review committees, unless the decisions or other actions of those committees show willful and wanton misconduct. Section 2b provides:

> "While serving upon any *** Peer Review Committee . *** any person serving on such committee, and any person providing service to such committees shall not be liable for civil damages as a result of his acts, omissions, decisions, or any other conduct in connection with his duties on such committees, except those involving willful and wanton misconduct." (Ill. Rev. Stat. 1985, ch. 111, par. 4406.)

Because the plaintiff's suit for willful and wanton misconduct and for antitrust violations seeks civil damages and because the allegations of the complaint arise out of

a peer review proceeding, the defendants are immune from liability for any alleged misconduct unless the complaint sufficiently states a cause of action for willful and wanton behavior.

Count II incorporates all of the 36 allegations in count I and further alleges that the defendants acted willfully and maliciously with the intent to injure the plaintiff by barring him from the Center's clinical staff. Count III incorporates the allegations in counts I and II and alleges further that the defendants conspired with one another to boycott and exclude him from the medical "patient market" of Coles County by restricting and destroying his ability to compete with physicians who enjoy full and active staff privileges. The trial court dismissed both counts for failure to state a cause of action and the appellate court affirmed.

Fact pleading, in contrast to notice pleading, is required in this State. (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 307.) A complaint must allege sufficient facts to bring plaintiff's claim for a remedy within the scope of a legally recognized cause of action. (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256.) To sufficiently plead willful and wanton misconduct, a plaintiff must allege either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff. (*O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469.) We have already shown that the allegations in count I do not support the claim that the defendants failed to follow the Center's bylaws in imposing the suspension on Adkins. Nor do the allegations in count I sufficiently allege facts showing that any of the individuals serving on the Executive Committee intentionally or knowingly caused Adkins injury by imposing the summary suspension without adequate cause or with utter indifference to his rights or in conscious disregard of them. Count I de-

scribes the events as and when they occurred. Count II simply characterizes the described activity as willful, wanton and intentional. Count II incorporates all of the allegations in count I which are insufficient to show willful and wanton misconduct, but it does not allege additional facts which, if proven, would show that the defendants acted or failed to act with an utter indifference or conscious disregard for the plaintiff's rights. There are no facts alleged which would show that the defendants acted without cause or that they proceeded despite knowledge that there was no basis for their actions.

In *Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 220, the court held that the words "falsely" and "maliciously," used to describe the acts and intentions of the defendants who wrote and published a report concerning the plaintiff-physician's credentials, were "pure conclusions of the pleader." The court stated that such conclusions were "meaningless and add[ed] nothing to the complaint without some further allegations of specific facts." (See also *Teter v. Clemens* (1986), 112 Ill. 2d 252, 256; *Tijerina v. Evans* (1986), 150 Ill. App. 3d 288, 291.) Because Adkins' complaint contains only conclusions of "willful and malicious" misconduct, with no factual allegations to show the defendants' intent or their indifference to or conscious disregard of the plaintiff's rights, the complaint did not plead sufficient facts to withstand the motion to dismiss. It is fundamental that facts and not conclusions are to be pleaded. If, without considering the conclusions that are pleaded, there are not sufficient allegations of fact to state a cause of action, a motion to dismiss will properly be granted, no matter how many conclusions may have been stated and regardless of whether they inform the defendant in a general way of the nature of the

claim against him. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426.

Adkins argues that the complaint does contain sufficient allegations that the defendants' conduct was willful and wanton. He cites his allegation that the Executive Committee repeatedly refused to abide by the bylaws and his allegation that the Center mailed a letter to the Department of Registration and Education advising of a final determination of his status before the appeals process had been completed. We, however, have already shown that the bylaws were followed and that there are no facts alleged in the complaint from which to infer that any of the procedures followed or the decisions made by the committees were unfair.

The allegation that the Center prematurely wrote to the Illinois Department of Registration and Education in and of itself is likewise insufficient to constitute willful and wanton misconduct. Although the letter of notification may at the time have been improperly sent, the complaint fails to state at whose direction and with what intent the notice was sent.

In summary, an actionable wrong cannot be made out merely by characterizing acts as having been wrongfully done; the pleading of conclusions alone will not suffice for the factual allegations upon which a cause of action must be based. (*Knox College v. Celotex Corp.*, 88 Ill. 2d at 426; *Salaymeh v. Interqual, Inc.* (1987), 155 Ill. App. 3d 1040, 1044.) The appellate court properly affirmed the dismissal of count II for failure to state a cause of action.

Of course, the same standard of factual pleading applies to the question of whether the plaintiff stated a cause of action under the Illinois Antitrust Act in count III. To state a cause of action under either section 3(1) or section 3(2) of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, pars. 60—3(1), (2)) a complaint must

allege the existence of an illegal combination or conspiracy. Although courts have been liberal in reading antitrust complaints, they have required at least that the defendants be identified, that the conspiracy be explained and that relevant facts of the claimed agreement be disclosed. *People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 154.

We appreciate that conspiracies by their very nature often do not permit the plaintiff to allege all the details of the defendant's conduct, but, as the appellate court observed, Adkins has failed to plead facts sufficient to suggest the existence of a consciously entered into illegal agreement to accomplish an anticompetitive objective by the persons involved in the peer review decisions here. The complaint sets out a conclusion that the defendants have jointly and improperly agreed that restrictions should be imposed on Adkins' right to practice medicine at the Center. It fails to support that conclusion with factual allegations of illegal agreement between any of the individual defendants or between individual defendants and the Center. The complaint alleges only a pure conclusion that the conduct described in counts I and II arose from an illegal conspiracy and was unreasonably restrictive. There are no allegations in count III which describe or suggest when, how or what the defendants agreed to do to restrict the plaintiff's right to practice medicine or what the purpose of such an agreement was. See Enders, *Federal Antitrust Issues Involved in the Denial of Medical Staff Privileges*, 17 Loy. U. Chi. L.J. 331 (1986) (for a discussion of alleging and proving agreement or conspiracy arising out of a denial of staff privileges under similar sections of the Federal antitrust statute).

Section 3(2) of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(2)) requires that the plaintiff, in addition to alleging illegal conspiracy, plead facts

which show that the conspiracy unreasonably restrained trade. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 154.) The complaint fails to factually allege an anticompetitive effect on the "patient market" in Coles County because of the alleged conspiracy. The complaint only says that because of the defendants' restricting actions, Adkins' patients will be required to use other doctors' services if they do not choose to travel to the neighboring hospital where Dr. Adkins apparently has full staff privileges. It does not allege that a significant "patient market" restraint is likely. Count III is deficient because it fails to allege facts sufficient to state a cause of action under the Illinois Antitrust Act. The trial court's dismissal of Adkins' antitrust claim was proper.

For the reasons given, the judgment of the the appellate court is affirmed.

*Appellate court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.