# Illinois Official Reports

## Appellate Court

---

### *Papadakis v. Fitness 19 IL 116, LLC*, 2018 IL App (1st) 170388

---

| | |
|---|---|
| Appellate Court Caption | MARIA PAPADAKIS, Plaintiff-Appellant, v. FITNESS 19 IL 116, LLC, d/b/a Fitness 19; F-19 HOLDINGS, LLC, d/b/a Fitness 19; and CHAD DRAKE, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0388 |
| Filed | June 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-05483; the Hon. Larry G. Axelrood, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Glenn J. Dunn Jr. and Angel P. Bakov, of Glen J. Dunn & Associates, Ltd., of Chicago, for appellant.<br><br>Hugh C. Griffin and Mary N. Nielsen, of Hall Prangle & Schoonveld, LLC, of Chicago, for appellees. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Presiding Justice Burke and Justice McBride concurred in the judgment and opinion. |

**OPINION**

¶ 1    While exercising at a health club called Fitness 19 under the supervision of one of the club's personal trainers, plaintiff, Maria Papadakis, slipped and fell off an unsecured piece of equipment known as a plyometric step. She sued the health club, its corporate affiliate (collectively, the Fitness 19 Defendants), and the personal trainer, Chad Drake, for negligence and willful and wanton conduct. She also sued the Fitness 19 Defendants under a theory of *respondeat superior* for the conduct of their employee, Drake.

¶ 2    The trial court dismissed the direct claims of willful and wanton conduct against the Fitness 19 Defendants but left intact the willful-and-wanton allegations against the personal trainer, Drake. That ruling is not challenged on appeal.

¶ 3    The trial court later entered summary judgment on all negligence claims, based on a waiver-of-liability clause in a contract plaintiff signed with the health club. To the trial court's thinking, that left standing only a single count: the direct claim of willful and wanton conduct against the personal trainer, Drake, with no viable claims against the Fitness 19 Defendants.

¶ 4    Plaintiff does not challenge the trial court's ruling that the waiver-of-liability clause barred all negligence claims. Plaintiff challenges only a sliver of the summary judgment ruling. She says that the *respondeat superior* counts against the Fitness 19 Defendants (counts II and VI) alleged not only the employee's negligence but also his willful and wanton conduct. Thus, while she does not challenge the grant of summary judgment on counts II and VI insofar as they concerned Drake's negligence, she claims that those counts should stand to the extent they allege his willful and wanton acts.

¶ 5    After the grant of summary judgment below, plaintiff filed a motion to reconsider to make this very point—that counts II and VI should be read as including willful-and-wanton allegations and thus, to that extent, should have survived the summary judgment ruling. The trial court did not read the complaint the same way, writing that its summary judgment ruling "did not address counts of willful and wanton conduct against [the Fitness 19 Defendants] because *such counts were not pled* in the second amended complaint." (Emphasis added.)

¶ 6    Plaintiff also sought leave to file a third amended complaint to more explicitly add allegations of willful and wanton conduct by Drake in the *respondeat superior* counts II and VI. The trial court denied that motion, too.

¶ 7    On appeal, plaintiff argues that the trial court abused its discretion in denying her leave to amend the complaint and likewise erred in denying the motion to reconsider its entry of summary judgment as to counts II and VI. The rulings came in different orders on different dates.

¶ 8    As a preliminary matter, the Fitness 19 Defendants challenge our jurisdiction to hear the appeal from the order denying plaintiff leave to file a third amended complaint. We agree that we lack jurisdiction over that order.

¶ 9    At the time the appeal was taken, the matter was pending (and remains pending) in the trial court, as count IV, directed against defendant Chad Drake, survived all the dispositive motions. Under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims *only* if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." (Emphasis added.)

- 2 -

¶ 10    Ordinarily, an order denying leave to amend a complaint is not considered a "final judgment." *Ely v. Pivar*, 2018 IL App (1st) 170626, ¶ 39; *Paul H. Schwendener, Inc. v. Jupiter Electric Co.*, 358 Ill. App. 3d 65, 82 (2005); *Gray v. Starkey*, 41 Ill. App. 3d 555, 558 (1976). But we may review the denial of leave to amend when the plaintiff sought to amend counts that the trial court dismissed with prejudice. *Ely*, 2018 IL App (1st) 170626, ¶ 39; *Jupiter*, 358 Ill. App. 3d at 82. That principle has been extended as well to denials of leave to amend certain counts on which (as here) summary judgment was granted. See *Enblom v. Milwaukee Golf Development*, 227 Ill. App. 3d 623, 628 (1992) ("As a result of our determination that we have jurisdiction over the appeal of the denial of the motion to vacate the summary judgment, we have permitted ourselves to comment substantively on the issue of leave to amend due to the effect of the summary judgment on the motion for leave to amend.").

¶ 11    But we need not decide if plaintiff could bootstrap that denial-of-leave order onto the summary judgment order here because, even if she could, we would lack jurisdiction over the order denying leave to amend for a different reason: it lacked the requisite finding under Rule 304(a) that there was no just reason to delay enforcement from or appeal of that order. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). "In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liability of fewer than all the parties is not enforceable or appealable." *Id.* Even if the order denying leave was final, it was not appealable. We thus lack jurisdiction to review it. *Ely*, 2018 IL App (1st) 170626, ¶ 36 ("[T]he absence of a Rule 304 finding in a judgment—for whatever reason—leaves the judgment final but unenforceable and unappealable." (Internal quotation marks omitted.)); *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 21.

¶ 12    We do, however, have jurisdiction to review the order denying plaintiff's motion to reconsider summary judgment, as it was unquestionably a final order, and it contained the requisite Rule 304(a) language. See *Enblom*, 227 Ill. App. 3d at 628. We turn to that question.

¶ 13    A motion to reconsider brings to the court's attention changes in the law, new evidence, or errors in the court's application of existing law. *Broadnax v. Morrow*, 326 Ill. App. 3d 1074, 1082 (2002). We usually review this ruling for an abuse of discretion. *Id.* But when the motion to reconsider argues that the trial court committed legal error in entering summary judgment, our review is *de novo*, as we are really just reviewing the original grant of summary judgment. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 837-38 (2002). And plaintiff's argument is a purely legal one—that the trial court improperly disposed of the *respondeat superior* counts in their entirety in its summary judgment order, when it should have read them as including not just claims of Drake's negligence but also his willful and wanton conduct.

¶ 14    Summary judgment is proper only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). We construe these materials strictly against the movant and liberally in favor of the opponent. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. As summary judgment is a drastic disposition, the moving party's right must be "clear and free from doubt." *Id.*

¶ 15    Under the *respondeat superior* doctrine, an employer can be vicariously liable for the torts of an employee acting within the scope of employment. *Vancura v. Katris*, 238 Ill. 2d 352, 375 (2010). The employee's liability is imputed to the employer; the plaintiff generally need not establish any malfeasance by the employer. *Id.* The employer's liability extends to negligent, willful, malicious, or even criminal acts of its employees within the scope of employment.

*Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009); *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 932 (1997).

¶ 16    *Respondeat superior* liability attaches for an employee's conduct if (1) an employer/employee relationship existed, (2) the principal controlled or had the right to control the employee's conduct, and (3) the employee's conduct fell within the scope of the agency or employment. *Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 18. For purposes of this appeal, there is no issue as to whether plaintiff has established these requirements. The Fitness 19 Defendants have conceded that Drake was their employee and have never claimed in any dispositive motion (or on appeal) that Drake was *not* acting within the scope of his employment when his client, plaintiff, was injured. For summary judgment purposes, construing the record liberally in plaintiff's favor, we thus presume that plaintiff has established the three prerequisites.

¶ 17    Nor is there an issue as to the sufficiency of the willful and wanton claims directed against the employee, Drake, in the count directed at him (count IV). The trial court ruled that a question of fact existed as to whether Drake's conduct was willful and wanton; indeed, count IV was the only count headed to trial following the summary judgment ruling.

¶ 18    In other words, there is no question that for our purposes, plaintiff has a cognizable claim of willful and wanton conduct against Drake, nor is there a question that the Fitness 19 Defendants could be held liable, in theory, for Drake's willful and wanton acts. The only issue is whether plaintiff actually *alleged* that the Fitness 19 Defendants were liable for Drake's willful and wanton conduct, as opposed to merely his negligent conduct, in counts II and VI, the *respondeat superior* counts. The trial court believed that counts II and VI did not allege willful and wanton acts—only negligent acts.

¶ 19    The Fitness 19 Defendants agree. They raise the following points in support: (1) counts II and VI were entitled "Negligence—*Respondeat Superior*"; (2) counts II and VI neither mentioned the words "willful and wanton conduct" nor the phrases typically pleaded to allege that conduct; and (3) willful and wanton conduct is materially different from negligent conduct, and thus so are the pleading requirements, so a court should not infer the former from the latter.

¶ 20    Deciding this question puts us in unusual terrain in reviewing a grant of summary judgment: we must examine the sufficiency of the complaint. Usually, we probe the record for the existence of a question of material fact, or we decide a substantive issue of law, in determining whether the right to summary judgment was "clear and free from doubt." *Mashal*, 2012 IL 112341, ¶ 49. But there is no question that the pleadings can play a role in this analysis. After all, the governing statute itself directs us to consider "the pleadings" as well as the affidavits, depositions, and admissions in the record. 735 ILCS 5/2-1005(c) (West 2014); see *Mashal*, 2012 IL 112341, ¶ 49. So we begin with general pleading principles.

¶ 21    Pleadings serve to inform the court and the parties "of the legal theories relied upon and to give notice of the factual issues which are to be tried." *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 335 (1997). As such, "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2-612(b) (West 2016). Pleadings are not intended to "create obstacles of a technical nature to prevent reaching the merits of a case" but rather "to facilitate the resolution of real and substantial controversies." (Internal quotation marks omitted.) *Norman A. Koglin Associates v. Valenz*

*Oro, Inc.*, 176 Ill. 2d 385, 395 (1997) (quoting *People ex rel. Scott v. College Hills Corp.*, 91 Ill. 2d 138, 145 (1982)). We liberally construe pleadings with a view to doing substantial justice between the parties. *1,124,905 U.S. Currency*, 177 Ill. 2d at 335; *People ex rel. Fahner v. Carriage Way West, Inc.*, 88 Ill. 2d 300, 308 (1981); 735 ILCS 5/2-603(c) (West 2014).

¶ 22   Before deciding whether the *respondeat superior* counts sufficiently pleaded willful and wanton conduct in addition to negligence, we must discuss the differences and similarities between the two. Negligence is a cause of action sounding in tort, but there is no separate, independent tort of willful and wanton conduct. *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19. Willful and wanton conduct is "an aggravated form of negligence." *Id.* Thus, to recover for willful and wanton conduct, a plaintiff must first plead the elements of negligence (duty, breach of duty, injuries proximately caused by the breach) and then also plead a heightened state of mind. *Id.*; see also *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 235 (2010); *Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004).

¶ 23   How, precisely, to define that heightened state of mind has proven elusive. "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko v. Soo Line R.R. Co.*, 161 Ill. 2d 267, 275-76 (1994). That said, our supreme court has described it as "a deliberate intention to harm or a conscious disregard for the plaintiff's welfare" (*Jane Doe-3*, 2012 IL 112479, ¶ 19) and as "an utter indifference to *** the welfare of the plaintiff" (*Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 518 (1989)). And the supreme court has long held that utter indifference or conscious disregard can include "the failure to take reasonable precautions after 'knowledge of impending danger.' " *Barr v. Cunningham*, 2017 IL 120751, ¶ 20 (quoting *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 429 (1980)).

¶ 24   In any event, at a minimum, negligence and willful and wanton conduct "shar[e] some characteristics." *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 451 (1992). In fact, in the appropriate case, the same facts that are alleged to constitute negligent conduct could be sufficient to allege willful and wanton conduct. *O'Brien v. Township High School District 214*, 83 Ill. 2d 462, 465-66, 468 (1980); accord *Block v. Lohan Associates, Inc.*, 269 Ill. App. 3d 745, 771 (1993) ("It is established law that the same actions may be done negligently or with wilful and wanton disregard, and that allegations for wilful and wanton conduct will not fail simply because they mirror allegations for negligence and merely change the state of mind.").

¶ 25   With that in mind, we examine counts II and VI of the second amended complaint, which are substantively identical, the only difference being the name of the different corporate defendants. Both counts adopt and incorporate by reference the general allegations raised in the "Common Facts" that preceded the numbered counts. Those general allegations detail the accident in which plaintiff fell off the unsecured plyometric step while under the supervision of the club's trainer, Drake.

¶ 26   The complaint alleges that during seven weeks of workouts before the date of the accident, Drake had instructed plaintiff to use the plyometric step, but "only in the rubber floor area of the fitness facility," where "the plyometric step was secured against a solid surface, *e.g.*, a wall, as to prevent it from moving while being utilized." But on the day of the accident—November 29, 2012—Drake placed the plyometric step "in the carpeted area" of the fitness facility, where

it "was not secured against a solid surface," nor did the step contain "anti-slip or anti-skid feet" or "ridges on the bottom of it." And due to its age, "the bottom of the plyometric step was worn off and it had a smooth surface."

¶ 27 The complaint alleges that Drake knew the step was unsecured and knew about all of these aspects of the step that made it prone to slipping. It also alleges that, before starting the step exercises, "[p]laintiff told Chad Drake that she did not feel safe performing the exercise and utilizing the plyometric step" because it "was freestanding and not secured against a flat surface" as it always had been in the past; she also told Drake that she did not feel safe using the step "on the carpeted area" of the facility. The complaint alleges, however, that "Drake insisted that Plaintiff utilize the plyometric step" and "assured Plaintiff that she would be safe even though he knew the step was unstable." After plaintiff performed one set of exercises, she "again expressed her concern for her safety" to Drake, but Drake "insisted that what Plaintiff was experiencing was just a mental block and instructed her to 'get over it' and continue performing the exercise."

¶ 28 Plaintiff alleged that during the third set of repetitions, the plyometric step "moved backwards, causing [her] to fall and make contact with the fitness center floor with great force." She alleged that Drake had moved away from her at that moment—he was putting away another piece of equipment—and thus failed to brace her or catch her.

¶ 29 As these allegations were incorporated into counts II and VI, they are obviously part of those counts. See *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). They allege that Drake created an unsafe condition, an unbraced plyometric step, made unsecured because he moved it from a rubber mat against a wall to a carpeted area out in the open gym and because the step had no anti-skid features and was worn smooth on the bottom due to age. Drake knew it was unsecured and unsafe. Plaintiff told him she did not feel safe using it. Drake "insisted" that she use it anyway. When plaintiff stopped after the first round of exercise, again expressing concern for her safety, he again "insisted" she continue and told her to "get over" her concern. And then he walked away, so when she fell, he was not there to stabilize her or catch her.

¶ 30 This was more than sufficient to plead "the failure to take reasonable precautions after 'knowledge of impending danger.' " *Barr*, 2017 IL 120751, ¶ 20 (quoting *Lynch*, 82 Ill. 2d at 429). It also suffices to plead "a conscious disregard for the plaintiff's welfare" (*Jane Doe-3*, 2012 IL 112479, ¶ 19) or an "utter indifference" to her safety (*Adkins*, 129 Ill. 2d at 518).

¶ 31 We would also note that the allegations of willful and wanton conduct directed against Drake, in count IV, incorporated these same general allegations and only elaborated on them slightly within the body of count IV—yet those allegations survived a motion to dismiss. If they are good enough for a direct claim against Drake, they are good enough for a *respondeat superior* claim against his employers for that very same conduct.

¶ 32 It is true that counts II and VI were titled "Negligence—*Respondeat Superior*." That did not help matters, but the title of a count has never controlled over the substance of the claim. "[T]he character of [a] pleading should be determined from its content, not its label." (Internal quotation marks omitted.) *In re Parentage of Scarlett Z.-D.*, 2015 IL 117904, ¶ 64 (quoting *In re Haley D.*, 2011 IL 110886, ¶ 67). "[C]ourts should look to what the pleading contains, not what it is called." (Internal quotation marks omitted.) *Id.*; see also *Township of Jubilee v. State*, 2011 IL 111447, ¶ 34 ("Formality is important in some contexts, but pleadings are to be liberally construed with a view toward doing substantial justice between the parties *** and

- 6 -

Illinois courts have not hesitated to characterize pleadings by their content rather than by their title.").

¶ 33    The Fitness 19 Defendants are also correct that the words "willful and wanton" never appear in counts II and VI, nor do any phrases such as "conscious disregard" for or "utter indifference" to plaintiff's safety, or any others typically associated with willful and wanton acts. But the *facts* are there. Illinois is a fact-pleading state. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 335; *Fahner*, 88 Ill. 2d at 308. We do not look for magical buzzwords; we ask whether the complaint "allege[s] sufficient facts to bring plaintiff's claim for a remedy within the scope of a legally recognized cause of action." *Adkins*, 129 Ill. 2d at 518. "It is fundamental that facts and not conclusions are to be pleaded." *Id.* at 519.

¶ 34    We do not see how defendants could possibly complain that they have not been given "notice of the factual issues which are to be tried." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 335. Nor do we think that reading counts II and VI as including willful and wanton claims would violate the notion of construing pleadings with an idea toward "substantial justice." *Id.*; *Fahner*, 88 Ill. 2d at 308; 735 ILCS 5/2-603(c) (West 2014). After all, the Fitness 19 Defendants obviously understood that plaintiff was seeking to hold them vicariously liable for the acts of Drake. Other than having to prove the three elements for *respondeat superior*— which were clearly pleaded in counts II and VI—the case rose or fell on Drake's actions, which the complaint clearly alleged to include willful and wanton acts.

¶ 35    The Fitness 19 Defendants cite *Adkins*, 129 Ill. 2d at 518, as an example of a court finding an insufficient pleading of willful and wanton conduct for failure to plead "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." But that decision illustrates our point; the plaintiff there *did* plead that the defendants' actions were "willful, wanton and intentional." *Id.* at 519. What doomed that complaint was its failure to allege "*facts* which, if proven, would show that the defendants acted or failed to act with an utter indifference or conscious disregard for the plaintiff's rights." (Emphasis added.) *Id.* Counts II and VI here do not suffer from that problem.

¶ 36    *Adkins* favorably cited the decision in *Spencer v. Community Hospital of Evanston*, 87 Ill. App. 3d 214, 220 (1980), where this court likewise held that the complaint's "pure conclusions of law" that the defendants " 'falsely' " and " 'maliciously' " acted against the plaintiff "add[ed] nothing to the complaint without some further allegations of specific facts." See *Adkins*, 129 Ill. 2d at 519 (discussing *Spencer*); see also *Cipolla v. Bloom Township High School District No. 206*, 69 Ill. App. 3d 434, 437 (1979) ("Willful and wanton misconduct must be manifested by the facts alleged in the complaint ***.").

¶ 37    The facts are the key, and counts II and VI had them. Thus, however inartfully styled, counts II and VI alleged *respondeat superior* liability for Drake's willful and wanton conduct, and to that extent they should have survived summary judgment.

¶ 38    In fairness to the trial court, plaintiff could have done a much better job of delineating her claims in the second amended complaint. When the trial court entered summary judgment on all counts pertaining to negligence, based on the liability-waiver clause in the health club contract, the court was understandably not focused on the nuances of counts II and VI. But when plaintiff filed her emergency motion to reconsider summary judgment as to counts II and VI, calling this point to the trial court's attention, the motion to reconsider should have been granted.

¶ 39       We reverse the trial court's order insofar as it entered summary judgment as to the willful and wanton claims in counts II and VI and remand this cause for further proceedings consistent with this opinion.

¶ 40       Reversed and remanded.