Frederick D. WESTLAND, Plaintiff,

v.

SERO OF NEW HAVEN,
INC., Defendant.

No. 83 C 1823.

United States District Court,
N.D. Illinois, E.D.

Jan. 18, 1985.

Richard J. Grossman, New York City, for plaintiff.

Harold Hirshman, Robert H. Oakley, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff Frederick D. Westland ("Westland") brings this action based on an alleged wrongful termination of an oral employment agreement by defendant Sero of New Haven, Inc. ("Sero"). Westland acted as Sero's midwest sales representative for Sero's line of women's shirts and sportswear until his discharge on June 15, 1982. In Count I, Westland alleges that his termination breached his agreement with Sero and requests damages for all commissions that he would have earned in the remainder of 1982 and for all of 1983. Count II alleges that Sero's termination of Westland interfered with and denied him a "prospective business advantage" and seeks, in addition to compensatory damages, $100,000 in punitive damages. Presently pending before this Court are several motions.

*Sero's Motion to Dismiss Count II*

As part of its trial brief, filed on September 7, 1984, Sero moved to dismiss Count II of the original complaint. On September 12, 1984, Westland filed a motion for leave to file an amended complaint. Count II of

Westland's proposed amended complaint is identical to Count II of the original complaint, and thus this Court will address Sero's motion to dismiss Count II first.

In Count II, Westland claims in part that he expended substantial amounts of time and money in developing customers, that Sero's wrongful termination left him "without a line of clothing to represent of the same character and quality" as that of Sero, and that he suffered a loss of commissions from sales for such lines as well as injury to his good will and business reputation because he was unable to service and meet the expectations of his customers. (Complaint, ¶¶ 28, 29.) He asserts that Sero's actions "have denied plaintiff a prospective business advantage and prevented him from accepting any additional lines while he represented defendant." (Complaint, ¶ 32.) Both parties have treated these allegations as asserting a claim for tortious interference with prospective economic advantage.

As an initial matter, Westland argues that Sero failed to present its motion to dismiss prior to the time that Sero filed the answer to the complaint, and thus Westland moves in its brief to strike Sero's motion to dismiss, presumably because Sero has waived dismissal for failure to state a claim as a defense. Sero counters by asserting that Westland's argument "ignores the plain language of Rule 12(c), which states: 'After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.'"

 Both parties are in error. Sero has never moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and, indeed, the only relief it requests is dismissal of Count II for failure to state a claim of the tort of intentional interference with prospective economic advantage. Because

Count II arguably states additional causes of action, and because Sero has not addressed all the claims presented in Count II, judgment dismissing Count II in its entirety is inappropriate. Nonetheless, Westland's waiver theory for Sero's alleged failure to timely file its motion to dismiss is also in error. Under Rule 12(h)(2) of the Federal Rules of Civil Procedure, Sero has not waived its Rule 12(b)(6) motion to dismiss because that defense was raised as its First Affirmative Defense in Sero's answer to the complaint. Fed.R.Civ. Pro. 12(h)(2). Accordingly, this Court will address Sero's substantive argument that Count II fails to state a claim for the tort of intentional interference with prospective economic advantage.[1]

 Under Illinois law, that tort consists of the following elements: (1) a reasonable expectation of entering into a valid business relationship; (2) knowledge of that relationship on the part of the interferer; (3) intentional interference by the defendant inducing or causing a third party to breach or terminate the relationship or expectancy; and (4) injury resulting from the interference. *Parkway Bank & Trust Co. v. City of Darien*, 43 Ill.App.3d 400, 2 Ill.Dec. 234, 357 N.E.2d 211 (2d Dist.1976); *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 16 Ill. App.3d 709, 306 N.E.2d 549 (1st Dist.1973), *aff'd in part, rev'd in part*, 61 Ill.2d 129, 334 N.E.2d 160 (1975).

 In this case, although Westland has alleged adequately the existence of a valid business expectancy with his customers to provide them with women's shirts and sportswear of a quality comparable to that of Sero, Sero's knowledge of that expectancy, and injury resulting from Sero's conduct, Westland has not alleged in his complaint any conduct by Sero which interfered with his business opportunities with third parties.

---

1. Perhaps these problems could be avoided if counsel were to follow the established formal procedures set forth in the Federal Rules of Civil Procedure and in the Local Rules for the Northern District of Illinois for filing motions and legal memoranda separately. *See, e.g.,* Rule 7, Fed.R.Civ.Pro.; Rules 12 and 13 of the Local Rules for the United States District Court of the Northern District of Illinois.

Westland does not dispute that an allegation of conduct directed by defendant toward a third party through which the defendant purposely causes that third party not to enter into or continue with a prospective contractual relationship with the plaintiff is essential to stating a cause of action for the tort of intentional interference with a prospective business opportunity. *McIntosh v. Magna Systems, Inc.,* 539 F.Supp. 1185 (N.D.Ill.1982); *DP Service, Inc. v. AM International, Inc.,* 508 F.Supp. 162 (N.D.Ill.1981). Instead, he argues in his brief that under the liberal notice pleading standard for deciding motions to dismiss, this Court can infer from his allegations that he has in fact met the third party pleading requirement by asserting that Sero contacted his customers and told them "that they must now deal with them if they expect to continue to purchase Sero shirts ...." Such an inference, however, simply cannot be drawn from the allegations contained in the complaint.

 The Court recognizes that in deciding a motion to dismiss for failure to state a claim, it must not only accept as true all well-pleaded facts in the complaint and inferences reasonably to be drawn therefrom, but must also construe those allegations in favor of the party opposing the motion. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Assertions made in a party's brief, however, simply cannot substitute for allegations that should have been pled in that party's complaint. Moreover, even if this Court were to infer, as Westland suggests, that Sero contacted Westland's customers and told them that they must deal with Sero if they wished to continue to purchase Sero shirts, that inference does not satisfy the third party pleading requirement. Assuming that Sero did contact Westland's customers as Westland contends, Sero merely told them the truth: once Westland was terminated, for whatever reason, his customers had no choice but to deal with Sero, or Sero's representative, if they wished to continue to purchase Sero products.

In this regard, Judge Shadur's opinion in *DP Service, Inc. v. AM International, supra,* is instructive. The plaintiff in *DP Service* alleged that the defendant AM had terminated DP as a distributor so that it could acquire DP's business for itself and sell directly to DP's customers. The court granted the plaintiff's motion to dismiss because the act that prevented DP from selling to those customers was its termination as a distributor by the defendant, not the defendant's contacts with these third party customers. Judge Shadur stated, "Even were DP able to prove that AM's motive in breaching the contract was to sell directly to DP's customers, under the Illinois cases that would not constitute the tort of intentional interference with prospective economic opportunity." 508 F.Supp. at 169.

 The conduct alleged in *DP Service* conceivably was worse than that of Sero in this case. Here, Sero is merely alleged to have terminated Westland and assigned his territory to new sales representatives, whereas in *DP Service,* the defendant allegedly acquired the plaintiff's business with the purpose of selling directly to DP's former customers. Here, as in *DP Service,* the mere allegation of "direct contact" between the defendant and a third party is not sufficient. The tort of intentional interference with a prospective economic opportunity requires allegations that the defendant's contact with the third party caused the disruption of an economic relationship with that third party. For example, if Westland had alleged, either directly or by inference from well-pleaded allegations, that Sero contacted his customers and intentionally caused them not to purchase the products of any other manufacturer from Westland, that conduct would constitute the tort of intentional interference with prospective economic opportunity. Westland has made no such allegation. Accordingly, Sero's motion to dismiss Count II of the complaint is granted in so far as it attempts to state a cause of action

of intentional interference with prospective economic advantage.[2]

*Westland's Motion For Leave To File An Amended Complaint*

On September 12, 1984, Westland filed his motion for leave to file its First Amended Complaint. The First Amended Complaint contains two additional counts. Count III alleges the existence of an implied employment contract between Westland and Sero based on industry custom and usage, and Count IV seeks damages for Westland's alleged loss of good will due to Sero's wrongful termination.

■ Sero has objected to Westland's motion, asserting that it will be prejudiced by the delay caused by a new complaint which Westland sought to file four months after discovery closed, after the parties have filed a pretrial order and jury instructions, and after the case was fully ready for trial. Westland correctly points out, however, that Sero has been aware, or should have been aware, of his claim for loss of good will from the commencement of this action because plaintiff complained of loss of good will in his original complaint. (Complaint, ¶¶ 28, 32.) Because Sero had ample opportunity to depose Westland prior to the close of discovery on all aspects of this claim, including his alleged damages resulting from the loss of good will, Sero's claim of prejudice in this regard is without merit.

Similarly, Sero cannot be heard to complain of surprise by Westland's proposed Count III grounded on an implied employment agreement based on custom and usage in the industry. Westland fully disclosed that theory to Sero in its trial brief, and in its proposed jury instructions, and Sero has had the opportunity for discovery on that theory. Indeed, Sero has fully deposed Westland's trial expert on custom and usage and has presented this Court with a motion *in limine* to preclude his testimony at trial. Because leave to file an amended complaint should be "freely given," Rule 14, Fed.R.Civ.Pro., and because Sero has not demonstrated adequately that it will be prejudiced, Westland is granted leave to file his First Amended Complaint.

*Miscellaneous Motions*

■ Sero has presented in its trial brief[3] two motions *in limine*. First, Sero contends that Westland should not be allowed to present evidence of damages beyond the 1982 "Holiday Season." Sero's motion is based on the proposition that, even under Westland's theory of the existence of an employment contract between Westland and Sero, Sero had the right to terminate Westland at any time if Sero gave Westland written notice of his termination "at least 60 days before the commencement of the next selling season."[4] This motion is granted in part. Westland was terminated in June, 1982. The parties agree that the next selling season at that time was the Spring of 1983 selling season which began in September, 1982 and ran until sometime in December, 1982. It is well-settled that Westland's damages for lost commissions stop at the date he *could* have been rightfully terminated. *Sierra Wine & Liquor Co. v. Heublein Inc.*, 626 F.2d 129, 132 (9th Cir.1980); *United Protective Workers v. Ford Motor Co.*, 223 F.2d 49, 52 (7th Cir.1955). Accordingly, Westland cannot present evidence of damages for lost commissions incurred beyond

---

**2.** Count II of the complaint is also dismissed insofar as it attempts to state a cause of action for interference with contractual relations. (Complaint, ¶ 32.) Westland has not alleged the existence of any contracts with third parties with which Sero interferred. Sero correctly pointed out, and Westland does not dispute, that Westland simply obtained orders from retail stores for the Sero line. These stores had no obligation to continue the purchase of the Sero line. Thus, Westland had no guarantee of continued sales, only an expectancy.

**3.** *See* n. 1, *supra*.

**4.** The term "selling season" refers to the period when clothes are marketed to retailers for later delivery. Because of the time lag involved, each season precedes its calendar counterpart by several months. Thus the so-called "Holiday Season" ran from July, 1982 to late August, 1982, and concerned clothes that would be delivered in October-November for sale during the Christmas shopping season.

168

the end of the first date he could have been rightfully terminated, which precise date is to be determined by the jury. In any event, evidence of damages for loss of commissions in 1983 will not be admitted.

■ Second, Sero asks this Court to bar the testimony of Westland's expert, Steve Ellbogen, who is to testify concerning the custom and usage of the women's clothing industry on employment contracts between manufacturers and representatives. After careful review of the briefs filed by the parties, this Court concludes that it must deny this motion because it is convinced that the expert's testimony is admissible and that the weight accorded to this evidence must be decided by the jury.

■ Finally, Westland has moved for leave to amend his list of potential witnesses stated in the pretrial order to add one witness. That motion is granted because Sero has not objected to the motion and because a new pretrial order must be filed by the parties in any event following the format of this Court's Standing Order. In light of this Court's rulings on the motions discussed in this opinion, the parties are granted 30 days to file such a Final Pretrial Order, at which point the case will be placed on this Court's trial calendar.

It is so ordered.