# Illinois Official Reports

## Appellate Court

---

### *Boffa Surgical Group LLC v. Managed Healthcare Associates Ltd.*,
### 2015 IL App (1st) 142984

---

| | |
|---|---|
| Appellate Court Caption | BOFFA SURGICAL GROUP LLC, JAMES BOFFA, and ANDREW AGOS, Plaintiffs-Appellants, v. MANAGED HEALTHCARE ASSOCIATES LTD., and SWEDISH COVENANT MANAGED CARE ALLIANCE, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2984 |
| Filed | December 23, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-13125; the Hon. Ronald Bartkowicz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jonathan Novoselsky, of Chicago, for appellants.<br><br>Sedgwick LLP, of Chicago (Fred A. Smith III and Diana M. Karnes, of counsel), for appellees. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justices Gordon and Palmer concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiffs Boffa Surgical Group LLC, Dr. James Boffa, and Dr. Andrew Agos (collectively, the Boffa Group) were not asked to participate in managed care groups at a hospital where they had staff privileges. The Boffa Group sued defendants Managed Healthcare Associates Ltd. (MHCA) and Swedish Covenant Managed Care Alliance (SCMCA), alleging antitrust violations and tortious interference with prospective economic advantage. The circuit court dismissed the Boffa Group's amended complaint for failure to state a cause of action, and the Boffa Group appealed.

¶ 2    We affirm the judgment of the circuit court. We hold that the circuit court properly dismissed the Boffa Group's claim that defendants violated Illinois antitrust law because, without something more, a staffing pattern dispute at one hospital does not cause an unreasonable restraint of trade within the ambit of the antitrust laws. The circuit court also properly dismissed the Boffa Group's claim of tortious interference with prospective economic advantage because they failed to allege defendants engaged in conduct directed at a specific third party.

¶ 3                                I. BACKGROUND

¶ 4    Plaintiff the Boffa Group is a medical group comprised of general surgeons licensed to practice medicine in Illinois, and plaintiffs Dr. Boffa and Dr. Agos are two of its general surgeons. Defendant MHCA is an independent practice association that arranges for the delivery of health care services to individuals covered by various health plans. Defendant SCMCA is a physician hospital organization. MHCA does credentialing for SCMCA. Both MHCA and SCMCA provide to the public at Swedish Covenant Hospital what are generally known as health care maintenance and management association services. The Boffa Group was not asked to be participants or physician members in MHCA and SCMCA. However, the Boffa Group had privileges to practice medicine, and did practice medicine, at Swedish Covenant Hospital. The Boffa Group also practiced medicine at other facilities in Illinois.

¶ 5    In December 2011, the Boffa Group sued defendants, alleging they engaged in conduct that served an anticompetitive objective in violation of Illinois antitrust law and interfered with plaintiffs' prospective economic advantage. The Boffa Group amended its complaint in March 2012 and alleged that, although they had privileges and continued to practice at Swedish Covenant Hospital, defendants unreasonably restrained competition at the hospital by excluding the Boffa Group from defendants' network even though the number of physicians in that network was not adequate to provide the necessary services for public health. The Boffa Group alleged this anticompetitive limitation of membership to a select group limited the number of physicians who could provide services to the hospital's patients, limited referrals by physicians with privileges at the hospital, limited the public's access to the Boffa Group's services, and intentionally prevented the Boffa Group from obtaining prospective business at the hospital. The Boffa Group alleged such practices had prevented one patient from receiving prompt treatment and resulted in that patient's death.

¶ 6    Defendants moved the court to dismiss the amended complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2010)), contending the factual allegations were insufficient to establish the elements of an antitrust violation or tortious interference with prospective economic advantage. Defendants argued that the Boffa Group

could not allege an unreasonable restraint on the relevant market where they continued to provide services at Swedish Covenant Hospital and various other institutions located in Illinois and there were 21 other hospitals or medical centers within 20 miles of Swedish Covenant Hospital.

¶ 7 After the parties briefed the motion to dismiss, the circuit court granted the motion in favor of defendants on November 6, 2012. Concerning the antitrust claim, the court concluded there were inadequate grounds for the court to interfere with the hospital's staffing decisions and the Boffa Group failed to allege an unreasonable restraint of trade where they still practiced medicine in the relevant marketplace. Concerning the tortious interference claim, the court found the Boffa Group failed to allege the necessary element that defendants interfered with action directed toward a specific third party, namely, the patients.

¶ 8 The Boffa Group moved to vacate and set aside the dismissal order, contending the court erred in its application of the case law concerning the antitrust claim. The Boffa Group also contended they would be able to state a claim for tortious interference with prospective economic advantage if they were able to file a second amended complaint under seal. After the parties briefed the motion to vacate and set aside the dismissal order, the circuit court denied that motion on April 5, 2013. Thereafter, the Boffa Group filed an emergency renewed motion to vacate and set aside the dismissal order, seeking leave to file an amended complaint on the tortious interference claim. Citing statutory confidentiality provisions, the Boffa Group asserted that filing the amended complaint under seal would allow defendants to defend on the issue of specific patients without publicly disclosing those patients. The circuit court granted the Boffa Group's motion and gave them leave until May 27, 2013 to file an amended complaint with respect to the tortious interference claim only.

¶ 9 After that deadline lapsed, the Boffa Group filed a motion for leave to file their complaint under seal. After hearing oral argument, the circuit court continued the motion to July 10, 2013, at which time the Boffa Group was to either have written consent from the patients to file the complaint or prove to the court that written consent was not required. That deadline lapsed, and the court gave the Boffa Group until August 12, 2013 to file an amended complaint under seal.

¶ 10 On September 12, 2013, the Boffa Group sought leave to file their amended complaint under seal, seeking an extension of time due to a docketing error. The circuit court allowed them to file an amended complaint *instanter* but denied their request to file it under seal, finding that they had failed to show a need for filing the complaint under seal. On September 24, 2013, the Boffa Group moved the court to reconsider allowing them to file the complaint under seal. They stated the basis for this request was to protect the identity of other physicians, not the prospective patients. The circuit court denied the motion and gave the Boffa Group until October 4, 2013 to file the second amended complaint.

¶ 11 On October 4, 2013, the Boffa Group filed their second amended complaint, alleging violations of Illinois antitrust law and tortious interference with a prospective economic advantage against defendants. The Boffa Group argued defendants required them to provide "fill-in" service but excluded them from membership in defendants' network and thereby interfered with the Boffa Group's ability to treat patients at Swedish Covenant Hospital and resulted in the loss of valuable referral business from individual physicians and physician groups.

¶ 12    Defendants moved to dismiss the complaint pursuant to section 2-615 of the Code, arguing the Boffa Group failed to correct the deficiencies previously recognized by the court in its initial dismissal decision. In the alternative, defendants moved to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2012)), arguing internal staffing decisions at private hospitals were not subject to judicial review unless the hospital's decision resulted in a revocation, suspension or reduction of a physician's existing staff privileges. After the parties briefed the motion, the circuit court granted defendants' section 2-615 motion to dismiss the second amended complaint on March 6, 2014.

¶ 13    The Boffa Group moved the court to reconsider the dismissal and sought leave to file another amended complaint. After the parties briefed the motion to reconsider, the circuit court denied that motion on May 6, 2014, denied the Boffa Group's request to file an amended complaint, and dismissed the second amended complaint with prejudice. On June 5, 2014, the Boffa Group filed a renewed motion to reconsider or vacate the dismissal, arguing that newly discovered evidence–*i.e.*, a newspaper article about Swedish Covenant Hospital's managed care issues–merited reversal of the court's dismissal of their claims with prejudice. On September 19, 2014, the circuit court denied the renewed motion and stated that this order was final and appealable. The Boffa Group appealed on September 24, 2014.

¶ 14                                    II. ANALYSIS

¶ 15    Because this matter was disposed of at the trial level upon defendants' motion to dismiss pursuant to section 2-615 of the Code, the issue before this court is whether the dismissed complaint stated a cause of action upon which relief can be granted. *Metrick v. Chatz*, 266 Ill. App. 3d 649, 651-52 (1994). The issue presented is one of law; consequently, our review is *de novo*. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084 (1994). Furthermore, we review the circuit court's denial of leave to file an amended complaint under the abuse of discretion standard. *Mendelson v. Ben A. Borenstein & Co.*, 240 Ill. App. 3d 605, 618-19 (1992).

¶ 16                          A. Illinois Antitrust Act Claim

¶ 17    To support their claim of a violation of section 3(2) of the Illinois Antitrust Act (Act) (740 ILCS 10/3(2) (West 2010)), the Boffa Group alleged defendants entered into an arrangement with Swedish Covenant Hospital to provide services to the hospital but limited the number of physicians admitted to defendants' organizations and excluded the Boffa Group from membership in defendants' group. The Boffa Group alleged defendants lacked the ability to provide the public in their area with medical services solely with their staff physicians and, thus, asked the Boffa Group on a regular basis to provide emergency medical services and treat patients admitted to Swedish Covenant Hospital. The Boffa Group argued that their exclusion from defendants' network restrained competition in the geographic market at and around Swedish Covenant Hospital by limiting the Boffa Group's ability to provide patient care and denying their services to the public. The Boffa Group contends they sufficiently pled the ultimate facts needed to support their claim of conspiracy under the Act and suggest that if they are permitted to conduct discovery, additional supporting facts will come to light.

¶ 18    Defendants respond that the Boffa Group has failed to state a cause of action under section 3(2) of the Act because their only complaint of an antitrust violation is that they were

not afforded membership in defendants' network. Defendants argue this claim, which is based solely on allegations concerning a single hospital's staffing decision, is insufficient under the Act to constitute an unreasonable restraint of the trade of providing medical services to patients. Defendants also assert there is no antitrust violation here because the Boffa Group continues to perform surgery at Swedish Covenant Hospital and there are 21 other hospitals and medical centers within 20 miles of that hospital; consequently, there is no restraint of trade or impact on competition as a whole within the relevant market. In addition, defendants argue the Boffa Group's complaint failed to allege a violation of section 3(2) of the Act because there were no factual allegations of a conspiracy, a restraint on trade, or that the staffing decision was for an anticompetitive purpose which operated to restrain trade.

¶ 19 "When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act." 740 ILCS 10/11 (West 2010). Section 3(2) of the Act provides in relevant part that "[e]very person shall be deemed to have committed a violation of this Act who shall *** [b]y contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce." 740 ILCS 10/3(2) (West 2010). Illinois courts construe section 3(2) of the Act in accordance with the construction given its federal counterpart, section 1 of the Sherman Act, under 15 U.S.C. § 1. *Laughlin v. Evanston Hospital*, 133 Ill. 2d 374, 384 (1990).

¶ 20 To state a cause of action under section 3(2) of the Act, a complaint must allege the existence of an illegal combination or conspiracy. *Adkins v. Sarah Bush Lincoln Health Center*, 129 Ill. 2d 497, 520-21 (1989). "Although courts have been liberal in reading antitrust complaints, they have required at least that the defendants be identified, that the conspiracy be explained and that relevant facts of the claimed agreement be disclosed." *Id*. at 521 (where a physician alleged that the denial of his application for renewal of staff privileges was a conspiracy by the hospital and its administrators designed to restrict trade, the court affirmed dismissal of the conclusory and general complaint, which failed to contain allegations describing or suggesting "when, how or what the defendants agreed to do to restrict the plaintiff's right to practice medicine or what the purpose of such an agreement was," and failed to allege facts showing that the conspiracy unreasonably restrained trade). See also *Holzrichter v. County of Cook*, 231 Ill. App. 3d 256, 263 (1992) (complaint failed to "articulate specific acts, statements or directives from the [American Medical Association] that would support the contention that [it] perpetrated or joined in such a conspiracy to harm or control the health care market by concealing malpractice"); *Regal Motors, Inc. v. Fiat Motors of North America, Inc.*, 133 Ill. App. 3d 370, 376 (1985) (complaint failed to allege "how the alleged conspiracy manifested itself with respect to the marketplace or what ultimate anticompetitive effects were realized").

¶ 21 Although the Seventh Circuit decision in *BCB Anesthesia Care, Ltd. v. Passavant Memorial Area Hospital Ass'n*, 36 F.3d 664 (7th Cir. 1994), is not binding precedent on this court, we find its reasoning persuasive and applicable to the instant case. In that case, the plaintiffs, a group of nurse anesthetists competed with physician anesthesiologists to provide anesthesia services at the only acute care general hospital in Jacksonville, Illinois. The plaintiffs alleged the hospital and the defendant doctors with staff privileges violated section 1 of the Sherman Act when the hospital terminated its contract with the plaintiffs and replaced them with services offered by physician anesthesiologists. *Id*. at 664-65.

¶ 22    The court noted a "hospital has an unquestioned right to exercise some control over the identity and number to whom it accords staff privileges." *Id.* at 667. Moreover, of the legion of cases that addressed the issue, the cases "almost always come to the same conclusion: the staffing decision at a single hospital was not a violation of section 1 of the Sherman Act." *Id.* at 667-68. The court stated:

> "A staffing decision does not itself constitute an antitrust injury. 'If the law were otherwise, many a physician's workplace grievance with a hospital would be elevated to the status of an antitrust action. To keep the antitrust laws from becoming so trivialized, the reasonableness of a restraint is evaluated based on its impact on competition as a whole within the relevant market.' " *Id.* at 669 (quoting *Oksanen v. Page Memorial Hospital*, 945 F.2d 696, 708 (4th Cir. 1991)).

The court concluded that the plaintiffs failed to state a claim under section 1 of the Sherman Act because they could continue to practice at the hospital or elsewhere and the hospital could continue with its present arrangement or choose another; the only restraint alleged was that the plaintiffs could not currently practice in the business form they preferred and the hospital may have charged somewhat higher prices. *Id.* at 668. Taking the pled facts as true, the court held that it could not infer that the plaintiffs' claim fell within the ambit of the Sherman Act, and the court would need better reasons before it would engage in the "micromanagement of the staffing arrangements at [the hospital] under the aegis of the antitrust laws." *Id.* at 669.

¶ 23    The facts of *BCB Anesthesia Care, Ltd.* are very analogous to the instant case. Like the nurse anesthetists in that case, the Boffa Group here continued to practice at Swedish Covenant Hospital and elsewhere in Illinois; the only restraint was that they could not practice as they would have preferred, as members of defendants' network of physicians. Furthermore, defendants' conduct here has an even less restraining effect on competition in the relevant market than in *BCB Anesthesia Care, Ltd.*, where the nearest hospital was 23 miles away in Springfield. The facts alleged by the Boffa Group do not bring their claim within the ambit of section 3(2) of the Act, and the reasons urged by the Boffa Group do not persuade this court to micromanage Swedish Covenant Hospital's staffing and health care management arrangement with defendants under the aegis of the Act. Section 3(2) of the Act requires the Boffa Group, in addition to alleging illegal conspiracy, to plead facts that show that the conspiracy unreasonably restrained trade. *Adkins*, 129 Ill. 2d at 521-22. The complaint merely alleges defendants entered into an amorphous and poorly explained agreement to exclude the Boffa Group and concludes that defendants' conduct was for an anticompetitive purpose. The complaint lacks specific allegations supportive of an illegal antitrust conspiracy or agreement or that such a conspiracy or agreement truly operated to restrain trade. There are no factual details given as to the who, when, or how of the purported conspiracy or how it resulted in a restraint of trade in the marketplace, particularly when there are 21 competing hospitals or medical centers within a short distance of Swedish Covenant Hospital and the Boffa Group, at all relevant times, enjoyed staff privileges and carried on their medical practice at Swedish Covenant Hospital and other Illinois institutions. Accordingly, we conclude that dismissal of the Boffa Group's antitrust claim was proper.

¶ 24    The Boffa Group argues this court should not follow *BCB Anesthesia Care, Ltd.* and should instead follow *Brader v. Allegheny General Hospital*, 64 F.3d 869 (3d Cir. 1995), where the court held that the plaintiff physician, who sued a hospital and other physicians for

Sherman Act violations based on his loss of staff privileges, adequately alleged an antitrust injury. We conclude, however, that *Brader* addressed a set of facts and issues that are distinguishable from the instant case. In *Brader*, the defendant peer review board allegedly violated the Sherman Act when its summary suspension of the plaintiff's staff privileges prevented him from obtaining staff privileges not only at the defendant hospital, but also at other hospitals in neighboring counties. *Id.* at 872. Like *BCB Anesthesia Care, Ltd.*, and unlike *Brader*, nothing prevented the Boffa Group from working at Swedish Covenant Hospital or hospitals in Chicago and elsewhere. The Boffa Group alleged they continued to perform surgery, albeit subject to defendants' limitations, at Swedish Covenant Hospital. Additionally, this court takes judicial notice that there are 21 other hospital or medical centers within 20 miles of Swedish Covenant Hospital where the Boffa Group can and does provide services.

¶ 25    The Boffa Group also cites *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991), and *Fuentes v. South Hills Cardiology*, 946 F.2d 196 (3d Cir. 1991), and argues allegations concerning the exclusion of a single physician from the medical market were sufficient to state a claim under the Sherman Act. We find the Boffa Group's reliance on those distinguishable cases to be misplaced. In *Summit Health*, the Court addressed the interstate commerce requirement of the Sherman Act with respect to the attempted exclusion of a physician from a particular geographic market. An ophthalmologist alleged that a hospital, its corporate owner, and its medical staff conspired in violation of section 1 of the Sherman Act to prevent him from providing ophthalmological services in the Los Angeles market by, *inter alia*, initiating peer review proceedings against him, summarily suspending and terminating his medical staff privileges, and threatening to distribute an adverse report about him to all hospitals in the market area. *Summit Health*, 500 U.S. at 324. Similarly, in *Fuentes*, 946 F.2d at 197-98, the plaintiff physician alleged that he could not obtain another position both within and outside Pennsylvania as a result of the termination of his privileges due to the defendants' wrongful conduct. Here, in contrast, the Boffa Group's allegations establish that they have not been denied access to the market for surgical services in the Chicago area because they continue to practice at Swedish Covenant Hospital and elsewhere in Illinois.

¶ 26                    B. Tortious Interference With Prospective Economic Advantage

¶ 27    The Boffa Group argues they pled sufficient facts to state a claim of tortious interference with prospective economic advantage where they alleged defendants unfairly limited referrals of patients to members of defendants' in-house physicians group, which was restricted in size and inadequate to service the needs of the patients of Swedish Covenant Hospital. Furthermore, although the Boffa Group had a medical practice at Swedish Covenant Hospital and elsewhere, they alleged defendants' refusal to offer them membership in defendants' group prevented them from obtaining any referral business from fellow physicians who had patients at Swedish Covenant Hospital and thereby unlawfully prevented them from obtaining the necessary benefits and economic advantage that would have resulted from the "fill-in" service they provided at Swedish Covenant Hospital. The Boffa Group argues the circuit court improperly required them to provide evidentiary facts to prove their allegation that defendants' denial of full network membership to them caused other physicians not to refer business to them.

¶ 28     To plead a sufficient cause of action for tortious interference with prospective economic advantage, a plaintiff must allege that (1) he had a reasonable expectancy of a valid business relationship; (2) the defendant knew about the expectancy; (3) the defendant intentionally interfered with the expectancy and prevented it from ripening into a valid business relationship; and (4) the intentional interference injured the plaintiff. *Douglas Theater Corp. v. Chicago Title & Trust Co.*, 288 Ill. App. 3d 880, 887 (1997). "A plaintiff states a cause of action only if he alleges a business expectancy with a specific third party as well as action by the defendant directed toward that third party." *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1020 (2005). It is not enough for the defendant's action to impact a third party; rather, the defendant's action must be directed towards the third party. *Schuler v. Abbott Laboratories*, 265 Ill. App. 3d 991, 995 (1993) (where the plaintiff alleged the defendant, his former employer, interfered with prospective economic advantage by threatening to enforce a noncompetition agreement with respect to two prospective employers, section 2-615 dismissal was proper because the defendant did not direct its activity to anyone other than the plaintiff, even though such activity would likely dissuade the prospective employers).

¶ 29     The Boffa Group has failed to meet the requirement of alleging a business expectancy with a specific third party. Their complaint merely alleges that defendants' conduct prevented unnamed physicians from referring patients to the Boffa Group and prevented unnamed patients from receiving services from the Boffa Group. They have also failed to allege any conduct by defendants directed at those unnamed physicians and patients. Even if defendants' conduct of not offering the Boffa Group membership in defendants' network was likely to dissuade other physicians from making referrals to the Boffa Group or dissuade other patients from using their services, "[c]ourts have rejected this argument, instead requiring that the interfering action be directed in the first instance at the third party." *Id*. Accordingly, the circuit court properly dismissed the Boffa Group's claim of tortious interference with prospective economic advantage.

¶ 30                                C. Denial of Leave to Amend

¶ 31     The Boffa Group argues the circuit court deprived them of the opportunity to present a valid complaint by dismissing their claims with prejudice and without leave to amend. The Boffa Group does not propose any amendments that would cure their defective pleading; they argue, without providing any specifics, that if they were permitted to conduct discovery, supporting facts would come to light.

¶ 32     Courts are given broad discretion in liberally allowing amendments of pleadings to foster the policy of resolving controversies on their merits. *Cook v. Board of Education of Edwardsville Community Unit School District No. 7, Madison County*, 126 Ill. App. 3d 1013, 1019 (1984); 735 ILCS 5/2-616 (West 2010). Nevertheless, plaintiffs do not have an absolute and unlimited right to amend. *Ruklick v. Julius Schmid, Inc.*, 169 Ill. App. 3d 1098, 1113 (1988). We review a trial court's decision to grant or deny a motion for leave to amend a pleading under the abuse of discretion standard. *Selcke v. Bove*, 258 Ill. App. 3d 932, 937 (1994). In determining whether the circuit court properly exercised its discretion, we consider "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the

pleading could be identified." (Internal quotation marks omitted.) *Hayes Mechanical, Inc. v. First Industrial, L.P.*, 351 Ill. App. 3d 1, 7 (2004). Where it is apparent even after amendment that no cause of action can be stated, leave to amend should be denied. *Ruklick*, 169 Ill. App. 3d at 1111.

¶ 33    As set forth in detail in the background section of this order, the court gave the Boffa Group multiple opportunities to plead their claims but they failed to present a complaint sufficient to withstand section 2-615 dismissal. When the court dismissed the antitrust claim and delineated the deficiencies of the complaint in a four-page written order, the Boffa Group never set forth any argument in their multiple motions to reconsider indicating they could amend the complaint to set forth facts showing the elements of that cause of action. Furthermore, concerning their tortious interference claim, the Boffa Group was allowed to amend their complaint to allege conduct by defendants directed towards a specific third party and, despite the circuit court granting them numerous continuances, failed to allege facts showing the elements of that cause of action. We find no abuse of discretion by the circuit court where the Boffa Group could not show that they could cure the deficiencies of their complaint.

¶ 34                                III. CONCLUSION

¶ 35    We affirm the judgment of the circuit court dismissing plaintiffs' amended complaint under section 2-615 of the Code for failure to plead a cause of action.

¶ 36    Affirmed.