2025 IL App (2d) 240703-U
No. 2-24-0703
Order filed December 1, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SILVERTHORNE DEVELOPMENT COMPANY, d/b/a Silverthorne Home Builders, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-L-74 |
| | ) | |
| SYCAMORE CREEK HOMEOWNERS ASSOCIATION, an Illinois Not-For-Profit Corporation, JOSH HALL, and JRH CONSTRUCTION CORPORATION, | ) ) ) ) | |
| | ) | Honorable |
| | ) | Bradley J. Waller, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In suit by developer against a rival developer and a homeowners association based on home-design rule changes that allegedly harmed plaintiff's prospects of building homes in the subdivision, plaintiff failed to allege facts satisfying the elements of tortious interference with business expectancy, civil conspiracy, or concert of action.

¶ 2    In October 2023, plaintiff, Silverthorne Development Company, doing business as Silverthorne Home Builders, brought its seventh amended complaint against defendants,

Sycamore Creek Homeowners Association (Association), JRH Construction Corporation (JRH) and Josh Hall, seeking, *inter alia*, damages for loss of business due to the adoption by the Association's Design Review Committee (DRC) of a rule prohibiting the use of vinyl windows in homes built in Sycamore Creek subdivision (Sycamore Creek). Plaintiff argues on appeal that the trial court erred in dismissing, for failure to state a cause of action, its claims for tortious interference with business expectancy, civil conspiracy, and concert of action. We affirm.

¶ 3                              I. BACKGROUND

¶ 4      This appeal arises from the dismissal, with prejudice, of plaintiff's seventh amended complaint. The claims at issue—tortious interference with business expectancy (count II), civil conspiracy (count V), and concert of action (count VI)—had been dismissed with prejudice from earlier complaints. However, plaintiff repleaded those claims to preserve them for appellate review. The three claims were numbered the same in all the complaints we discuss as background (except for the sixth amended complaint, which mistakenly labeled count VI as count X).

¶ 5      We begin our summary of the procedural history of this case with plaintiff's fifth amended complaint. Defendants moved to dismiss counts II and III[1] of that complaint for failure to state a cause of action (five earlier versions of the tortious interference claim were dismissed without prejudice). According to the motion to dismiss, count II was deficient because it failed to allege that any defendant had taken any action directed toward third parties with whom plaintiff expected to enter a business relationship. The trial court dismissed count II with prejudice. The court dismissed count III without prejudice and granted plaintiff leave to file a sixth amended complaint.

_____

[1]In none of its iterations is count III at issue in this appeal.

¶ 6    Plaintiff's six-count sixth amended complaint repleaded count II to preserve it for appellate review.  Defendants moved to dismiss counts V and VI[2] on the basis that both counts were premised on actions taken by Hall as an agent of the Association.  Defendants argued that there can be neither a conspiracy nor a concert of action between an agent and its principal.  Defendants also moved to dismiss count III.  The trial court dismissed counts V and VI with prejudice.  However, the court dismissed count III without prejudice and granted plaintiff leave to file a seventh amended complaint.  In that complaint, plaintiff repleaded counts II, V, and VI to preserve them for appellate review.

¶ 7    As pertinent here, the common allegations in plaintiff's seventh amended complaint were as follows.  Plaintiff was in the business of building homes under contract with specific clients.  Plaintiff owned lots and built homes in Sycamore Creek, which was "managed and controlled by the [Association] through its Board of Directors."  Hall operated JRH, a homebuilding business in competition with plaintiff.  "[Hall], at all relevant times, was a member of, *and therefore agent of*, the Defendant as well as responsible for making the sole decisions for the [DRC]."  (Emphasis added.)  Although plaintiff did not identify "Defendant" in this allegation, plaintiff apparently meant the Association (likely—more specifically—its board of directors); we similarly construe the unspecified "Defendant" in the remaining allegations quoted here as background.

¶ 8    As an exhibit to the complaint, plaintiff attached a copy of a declaration by Sycamore Creek's developers (Declarants) of conditions, covenants, restrictions, reservations, grants, and easements affecting Sycamore Creek (Declaration).  The Declaration identified certain circumstances under which the Declarants would be obligated to convey fee simple title to all

_____

[2]Count VI was mistakenly labeled as count X.

common areas in Sycamore Creek to the Association. The Declaration provided that its general purposes included "insur[ing] the tasteful and consistent development of Sycamore Creek *** [and] to guard against the erection thereon of buildings of improper design or unsuitable materials." Under the Declaration, the Declarants were entitled to appoint the DRC "to review the *** nature, kind, shape, height, material[,] and color scheme of all principal and accessory structures" on lots in Sycamore Creek. The Declaration further stated that its objectives included, *inter alia*,

> "assur[ing] a development of a distinctively high quality; to insure that [Sycamore Creek] *** is a Subdivision in which all lots effectively implement energy efficient features making Sycamore Creek one of the more desirable areas in which to live in DeKalb County, Illinois; *** encourag[ing] design features and the use of quality materials conducive to energy conservation which preserve and protect the value of all Dwellings in Sycamore Creek; [and] assur[ing] that any improvements or changes in the Property will be in harmony with the natural beauty of the area."

¶ 9 Plaintiff alleged further as follows. Plaintiff became the owner of several lots in Sycamore Creek that it held for development and sale. It built homes with vinyl windows, composed of "quality materials more conducive to energy conservation that [*sic*] aluminum clad or fiberglass windows." By contrast, the homes Hall built through JRH used clad windows instead of vinyl windows. The clad windows were more expensive and less energy efficient than vinyl windows but, in Hall's view, were more aesthetically pleasing. Because of the windows Hall used, there was less demand for his homes than for plaintiff's homes built with vinyl windows. Plaintiff continued:

"Due to this lack of demand in the free market, Defendant's [*sic*] through its [*sic*] influential agent, [Hall], unduly influenced and changed the design rules in direct contravention of the declaration by-laws so that his less efficient but more expensive window could be the only product offered and sold, which caused him to intentionally and malicious [*sic*] interfere with the anticipated builds [p]laintiff was in the process of developing due to Defendant's agent [*sic*] own envy, greed, and financial self-interest that he put above his duty to see that the by-laws were being carried out as written."

The "declaration by-laws," unlike the Declaration, were not appended to the complaint, and the complaint did not recite any language from the by-laws that conflicted with the alleged new design rules.

¶ 10    Plaintiff alleged that it lost several potential clients due to its inability to secure approval of home designs using vinyl windows. Plaintiff further alleged:

"At all times relevant to this case, the act or omission of [Hall] as an elected officer of the Defendant, took actions that, while unlawful, still fell within the scope of his employment as a board member and representative of the [DRC], and such conduct is the action or omission of the Defendant, not for profit corporation."

¶ 11    At issue in this appeal is whether the trial court erred in dismissing counts II, V, and VI, which were repleaded in plaintiff's seventh amended complaint after having been dismissed from prior complaints. As noted, count II sought recovery under the theory of tortious interference with business expectancy. Count II alleged, in pertinent part:

"The DEFEDANT [*sic*], through the actions of its agent, [Hall], intended to, and did in fact, purposefully interfere with [plaintiff's] business expectancies maliciously and intentional [*sic*] given [Hall's] participation and driving force in the vote to require

aluminum clad or fiberglass windows within [Sycamore Creek] interfered with [p]laintiff's agreement to build with more efficient homes utilizing vinyl windows, and was made by [Hall] solely for a personal attempt at self-gain, envy, jealous [*sic*], and greed without any regard to the fact that [p]laintiff's vinyl windows are more energy efficient than aluminum clad and fiberglass windows."

¶ 12    Count V alleged the existence of a civil conspiracy between Hall and the Association's board of directors, by which they unlawfully changed the DRC rules. Count VI alleged that defendants acted in concert to harm plaintiff by preventing it from building homes with vinyl windows.

¶ 13    Defendants again moved to dismiss. In October 2024—the case having languished at the pleading stage for over six years—the court dismissed the seventh amended complaint in its entirety, with prejudice. Plaintiff filed a timely notice of appeal.

¶ 14                                II. ANALYSIS

¶ 15    On appeal, plaintiff challenges the dismissal, with prejudice, of counts II (tortious interference with business expectancy), V (civil conspiracy), and VI (concert of action) of plaintiff's seventh amended complaint.

¶ 16    Motions to dismiss for failure to state a cause of action are governed by section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)). As our supreme court has recently observed:

> " 'A section 2-615 motion tests the legal sufficiency of the plaintiff's complaint, asking whether the allegations in the complaint, construed in the light most favorable to the plaintiff, state sufficient facts to establish a cause of action upon which relief may be granted.' [Citation.] '[A] cause of action should not be dismissed pursuant to section 2-

615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery.' [Citation.] Our review of a trial court's dismissal of a complaint pursuant to section 2-615 of the Code is *de novo*." *Hulsh v. Hulsh*, 2025 IL 130931, ¶ 13.

¶ 17 We first consider whether count II stated a cause of action for tortious interference with business expectancy.[3] The elements of that cause of action are " '(1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) the defendant's intentional and unjustified interference that prevents the realization of the business expectancy; and (4) damages resulting from the interference.' " *State Auto Property & Casualty Insurance Co. v. Distinctive Foods, LLC*, 2024 IL App (1st) 221396, ¶ 83 (quoting *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 384 Ill. App. 3d 849, 862 (2008)).

¶ 18 Plaintiff's theory as to why any action by Association or Hall to change what windows were allowed in Sycamore Creek homes was "unjustified" is not altogether clear. Evidently, it is plaintiff's view that, under the Declaration, energy efficiency was the paramount objective for homes in Sycamore Creek, to which aesthetic considerations such as "harmony with the natural beauty of the area" are necessarily subservient. Thus, plaintiff's position would appear to be that a prohibition against use of what are allegedly the *most* energy efficient windows is "unjustified," regardless of any competing concerns.

¶ 19 However, irrespective of whether the prohibition of vinyl windows was justified, plaintiff's tortious interference with business expectancy claim fails. It is well established that "Illinois courts require that a tortious interference claim be supported by allegations that the defendant acted

---

[3]This cause of action is also known as "intentional interference with prospective economic advantage" (*Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406 (1996)). *540 North Lake Shore Drive Condominium Ass'n v. MCZ Development Corp.*, 2025 IL App (1st) 230733, ¶ 37.

toward a third party." *Du Page Aviation Corp. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 803-04 (1992) (the defendant airport authority's refusal to enter into leases with the plaintiffs did not support claim of tortious interference with business where the plaintiffs alleged that the refusal interfered with their ability to deal with their own customers but did not allege that the defendant acted toward a third party). Plaintiff did not plead that the Association or Hall engaged in any act directed toward a third party.

¶ 20    *Boffa Surgical Group LLC v. Managed Healthcare Associates Ltd.*, 2015 IL App (1st) 142984, is instructive. There, a physicians' group sought recovery for tortious interference with prospective economic advantage after the group was not invited to participate in managed care groups at a hospital where the physicians had staff privileges. *Id.* ¶¶ 1, 27. The *Boffa* court held that the plaintiff's complaint failed to state a cause of action because, although exclusion from the managed care groups might cause the plaintiffs to lose referrals from other physicians, or might otherwise cost them patients, there was no allegation of any action directed toward a third party. *Id.* ¶ 29.

¶ 21    *Westland v. Sero of New Haven, Inc.*, 601 F. Supp. 163 (N.D. Ill. 1985), applied Illinois law consistently with *Boffa*. In that case, the plaintiff sued for interference with prospective economic advantage on the basis that the defendant's wrongful termination of the plaintiff as its sales representative interfered with his economic relationship with his customers. *Id.* at 164-65. The court concluded that the plaintiff failed to state a cause of action. *Id.* at 166-67. Even though the plaintiff properly alleged a valid business expectancy with his customers, termination of his position as sales representative did not qualify as conduct directed toward the plaintiff's customers. *Id.* at 165-66. The allegedly wrongful conduct, which was directed solely at the plaintiff, was not actionable "interference" with the plaintiff's business relationship with his customers. *Id.*

¶ 22    Likewise, here, there is no allegation that defendants engaged in any conduct directed at plaintiff's prospective customers.  The allegedly wrongful conduct simply made it more difficult for plaintiff to provide his services to those customers.  As in *Westland*, that conduct is not an actionable interference with a business expectancy.

¶ 23    Consonant with these principles, the trial court correctly ruled that plaintiff failed to state a tortious interference claim because it did not plead that defendants acted toward third parties.  In so holding, the court concluded that the DRC's adoption of the rule prohibiting the use of vinyl windows in homes built in Sycamore Creek was directed at builders.  Plaintiff claims that the trial court's conclusion was incorrect, "as the provision of the governing documents at issue make clear that the [DRC's] actions are designed to protect homeowners, *i.e.*, the people who will live in the homes once the homes are built."  Assuming this is true, it is unclear how plaintiff's prospective clients (even those it identified by name in the complaint) qualify as "homeowners," when the gravamen of the complaint is that they *chose not* to build homes in which they would have later resided.

¶ 24    Revealingly, other than the foregoing response to the trial court's reasoning, plaintiff's opening brief does not refer to the requirement that the defendant have "acted toward a third party" (*Du Page Aviation Corp.*, 229 Ill. App. 3d at 804).  Instead, plaintiff argues that, in dismissing the tortious interference claim, "the trial court incorrectly applied the *necessary impact* to third parties." (Emphasis added.)  Plaintiff further insists that it "explicitly pleaded the *necessary impact to third parties.*" (Emphasis added.)  By focusing on the "impact" to third parties, plaintiff undermines its own argument.  As defendants correctly point out, an "impact" on a third party is not sufficient to sustain a tortious interference claim in the absence of an act directed toward a third party.  See, *e.g.*, *Boffa*, 2015 IL App (1st) 142984, ¶ 28 ("It is not enough for the defendant's

action to impact a third party; rather, the defendant's action must be directed towards the third party."). In light of *Boffa*, we are unpersuaded by plaintiff's assertion in its reply brief that the variation in terminology ("impact" versus "acted [or directed] toward") is "a difference without a distinction."

¶ 25 Whatever "impact" the rule change concerning windows might have had on plaintiff's potential customers, it was no more "directed toward" them than (1) the exclusion of the plaintiffs in *Boffa* from a managed care group was directed toward potential patients or sources of referrals or (2) the termination of the plaintiff in *Westland* as the defendant's sales representative was directed at the plaintiff's customers.

¶ 26 In support of its argument that defendants engaged in conduct directed at third parties with whom plaintiff had an expectancy of entering into a business relationship, plaintiff cites *Advantage Marketing Group, Inc. v. Keane*, 2019 IL App (1st) 181126. In *Keane*, the defendant, while serving as a director, officer, and employee of the plaintiff (which operated a marketing services company), took steps to acquire a competing business for himself, and ultimately succeeded in doing so. *Id.* ¶¶ 3-7. The plaintiff, which had been exploring the acquisition of the same business, sued the defendant, seeking recovery for, *inter alia*, tortious interference with prospective economic advantage. *Id.* ¶¶ 5, 13. On appeal, there was no dispute that the defendant's acquisition of the competing business was conduct directed at a third party with which the plaintiff expected to do business.

¶ 27 Here, there is no meaningful parallel to *Keane*. We thus conclude that the trial court correctly dismissed plaintiff's claim of tortious interference with business expectancy.

¶ 28 We next consider plaintiff's civil conspiracy claim in count V. The elements of a civil conspiracy claim are: "(1) an agreement to accomplish by concerted action either an unlawful

purpose or a lawful purpose by unlawful means; (2) a tortious act committed in furtherance of that agreement; and (3) an injury caused by the defendant." *Kovac v. Barron*, 2014 IL App (2d) 121100, ¶ 103.

¶ 29 In addressing this issue, we compare the claim as it was pleaded in the sixth and seventh amended complaints. In the sixth amended complaint, plaintiff alleged in relevant part in count V:

"Defendants all made an agreement of two or more persons or entities to do an unlawful act or to do a lawful act by unlawful means by passing ARC [*sic*] guidelines that violates [*sic*] its by-laws in order to make JRH and Josh Hall homes not compete with [p]laintiff's more efficient and less costly builds in order to funnel profits and income to [Hall] and JRH, in violation of its by-laws and fiduciary duties."

¶ 30 In the seventh amended complaint, plaintiff realleged the above portion of count V but made a significant change:

"*Defendants [Hall] and Sycamore Creek Board* all made an agreement of two or more persons or entities to do an unlawful act or to do a lawful act by unlawful means by passing ARC [*sic*] guidelines that violates [*sic*] its by-laws in order to make JRH and Josh Hall homes not compete with [p]laintiff's more efficient and less costly builds in order to funnel profits and income to [Hall] and JRH in violation of its by-laws and fiduciary duties." (Emphasis added.)

Plaintiff added the emphasized language, thus specifying that Hall and the Association's board of directors were the alleged conspirators. Notably, in the allegations common to all counts, plaintiff alleged that "[Hall], at all relevant times, was a member of, *and therefore agent of*, the Defendant as well as responsible for making sole decisions for the architectural committee." (Emphasis

added.) Plaintiff also alleged that "Defendant's [*sic*] *through its* [*sic*] *influential agent, [Hall]*, unduly influenced and changed the design rules in direct contravention of the declaration by-laws." As noted, "Defendant" in these allegations is evidently the Association (likely—more specifically—its board of directors). The allegation of agency defeats the claim of civil conspiracy because it is well established that "there can be no conspiracy between a principal and an agent because the acts of an agent are considered in law to be the acts of the principal." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 738 (2009). If, as plaintiff alleged, Hall was an agent of the Association, he could not conspire with the Association through its board.

¶ 31 Nonetheless, plaintiff argues that its complaint "clearly pleaded [that Hall] commingled his role as the president of [JRH] with his role as a member of the [DRC]." Thus, plaintiff contends that the conspiracy was between two different legal persons: the Association and JRH. However, in repleading count V, plaintiff specifically alleged that the agreement was between the Association and *Hall*, not JRH.

¶ 32 When a trial court dismisses a claim and the plaintiff pleads over without adopting the prior pleading, the plaintiff forfeits review of the dismissal of the claim. *Jacobson v. Gimbel*, 2013 IL App (2d) 120478, ¶ 19. Forfeiture may be avoided by "fil[ing] an amended pleading that realleges, incorporates by reference, or refers to the dismissed counts." *Id.* Here, plaintiff realleged the conspiracy count but, as seen, narrowed its allegations about the parties to the agreement underlying the alleged conspiracy. It is well established that " '[a]n amendment, complete in itself, which does not refer to or adopt the prior pleading, ordinarily supersedes it and the prior pleading ceases to be a part of the record for most purposes, being in effect abandoned or withdrawn.' " *Crawford v. Hayen*, 2020 IL App (1st) 200076, ¶ 17 (quoting *Precision Extrusions, Inc. v. Stewart*, 36 Ill. App. 2d 30, 50 (1962)). We are aware of no exception to this principle for instances when

an amendment is designed to preserve, for appellate review, a previously dismissed claim. Accordingly, we need not consider whether a civil conspiracy could be founded on an agreement between the Association and JRH. Such a conspiracy is outside the scope of the relevant pleadings.

¶ 33 Plaintiff notes that Hall was a member of the Association's board while building homes (in competition with plaintiff) in Sycamore Creek. The thrust of these observations is simply that Hall labored under a conflict of interest. However, plaintiff cites no authority that the existence of a conflict of interest, *ipso facto*, invalidates the agency relationship such that an agent's acts are no longer those of the principal.

¶ 34 We observe that plaintiff has not relied on any recognized exception to the rule that there can be no conspiracy between a principal and its agent. Of conceivable relevance here, the rule does not apply "where the agent is acting not as an agent but as a principal; in such a case, the agent can be liable for conspiring with the principal." *Kovac*, 2014 IL App (2d) 121100, ¶ 105. We do not read plaintiff's assertion that Hall "commingled his roles" to imply that he was acting "not as an agent" when he participated in the adoption of the rule against vinyl windows. Moreover, even if that were plaintiff's position, it is not so self-evident that we would be obliged to accept it without the support of a reasoned argument. It is axiomatic that points not argued in the appellant's brief are forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 35 Finally, we consider count VI, which ostensibly sought relief under a theory of concert of action. In Illinois, claims based on concert of action are governed by section 876 of the Restatement (Second) of Torts (1979), titled "Persons Acting in Concert." *Thornwood, Inc. v. Jenner and Block*, 344 Ill. App. 3d 15, 28 (2003). Section 876 provides:

> "For harm resulting to a third person from the tortious conduct of another, one is
> subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design

with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial

assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and

his own conduct, separately considered, constitutes a breach of duty to the third person."

Restatement (Second) of Torts § 876 (1979).

¶ 36   Count VI alleged that defendants acted in concert.  However, as explained, because the acts of an agent are considered to be the acts of the principal, there can be no concert of action between them.  See *Alpha School Bus Co.*, 391 Ill. App. 3d at 738.  Here, we confront what we did not address in discussing count V: whether there was concert of action between the Association and JRH.  Again, plaintiff relies on the concept that Hall "commingled" his roles as president of JRH and a member of the DRC.  Consequently, we must determine whether Hall's actions can be imputed to JRH for purposes of a concert of action claim—an inquiry that depends on principles of agency law.

¶ 37   Section 7.03 of the Restatement (Third) of Agency (Restatement (Third) of Agency § 7.03 (2006)) provides, in pertinent part:

"(1) A principal is subject to direct liability to a third party harmed by an agent's conduct

when

(a) *** the agent acts with actual authority *** and

***

(ii) the agent's conduct, if that of the principal, would subject the principal to tort

liability[.]"

"Actual authority" may be express or implied. *Arris Group, Inc. v. CyberPower Systems (USA), Inc.*, 2021 IL App (1st) 191850, ¶ 53. "Express actual authority is granted explicitly by the principal to the agent. [Citation.] Implied actual authority is proven circumstantially by evidence of the agent's position." *Id.* Plaintiff alleged no facts bearing on the scope of Hall's actual authority, and we cannot simply assume that JRH explicitly granted Hall authority (or that his position with JRH implied authority) to violate the Association's Declaration. Consequently, there is no basis for imputing his actions to JRH, and we affirm the dismissal of count VI.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 40    Affirmed.